275 P.2d 891

John P. SCOTT, George E. McMillan and John E. McMillan, d/b/a Scott & McMillan Mortuary, Petitioners,

v.

Eva Henrietta RHYAN, widow of, and Pamela Marie Rhyan, Candice Lucille Rhyan, and Jackie Suzanne Rhyan, children of Jack Ernest Rhyan, deceased, Respondents.

No. 5922.

Supreme Court of Arizona.

Nov. 1, 1954.

Louis E. Kanne, Frank E. Flynn, Phoenix, for petitioners.

William P. Mahoney, Jr., J. C. Raineri, Phoenix, for respondents.

LA PRADE, Justice.

Petitioners John P. Scott, George E. McMillan and John E. McMillan, d. b. a. Scott & McMillan Mortuary, appeal by certiorari from an award of the Industrial Commission of Arizona, allowing benefits to the surviving widow and children of Jack Ernest Rhyan, a regular employee of petitioners. The Commission found petitioners to be employers of three or more employees and hence subject to the jurisdiction of the Commission under the Workmen's Compensation Law. The Commission further found that Jack Ernest Rhyan died from an accident arising out of and in the course of his employment. The petitioners, employers, carried no insurance for the benefit of their employees. The dependent claimants waived any right to any action at law that might have been available to them and filed their claim for benefits with the Commission as permitted by Section 56–947, A.C.A.1939. Petitioners claim error.

First it is asserted that the Industrial Commission was without jurisdiction in the premises because less than three employees were regularly employed by them in their

mortuary business. In their mortuary business they admittedly had two regular employees and actually had three employees if one Robert T. Miller was to be counted. They state that Miller was not an employee, as found by the Commission, but was an independent contractor. As such, Miller would not be counted in determining whether petitioners employed three or more employees. Section 56–928, A.C.A.1939, as amended. Secondly they claim that the Industrial Commission erred in finding that the decedent, Rhyan, came to his death from an accident arising out of and in the course of his employment. It is contended that Rhyan came to his death while voluntarily performing an humanitarian act outside the scope of his employment, for which they are not to be held liable. We will consider each proposition as presented.

The record establishes that Miller cleaned the ambulances and business grounds of petitioner, under an employment agreement between petitioners and Miller which was oral and had been in force for about ten years. Miller was not required to maintain regular hours but only to see that the grounds and ambulances were kept clean and full of gasoline. Throughout this period Miller was a full-time employee of the Santa Fe Railroad. Work for petitioners was performed on "off" hours from the railroad employment, for which he received a regular salary of $60 a month. Miller was carried on petitioner's regular monthly payroll. From his wages were deducted the appropriate sums payable by the employee for his contribution to the Federal Social Security fund. Occasionally when Miller was out of town he arranged to have substitutes perform his work for petitioners.

■ Many factors must be considered in differentiating between an independent contractor and an employee. The degree of supervision and control exercisable by the employer often is determinative. Grabe v. Industrial Commission, 1931, 38 Ariz. 322, 299 P. 1031. Here there was little occasion for supervisory direction, as is apparent from the nature of the tasks to be performed—cleaning automobiles and the tidying up of the premises. But it is not the exercise of the power to supervise and control but rather its existence which is to be considered. Industrial Commission v. Meddock, 1947, 65 Ariz. 324, 180 P.2d 580. At the hearing the following answers were elicited from petitioner Scott in reference to Miller:

"Q. But whenever he was employed by you or did report for work, the point I am making is that he was under or subject to whatever orders you might give? A. Regarding the cars you mean? Where to take them?

"Q. Well, anything you want done there within the line of his duty. That is just yes or no, isn't it? That is just a yes or no answer, isn't it? A. Well, naturally any man has charge

of his own car so he would be under my orders what he did to the car? Is that what you want?"

Other factors are stated in Industrial Commission v. Meddock, supra. None is necessarily conclusive in itself. Blasdell v. Industrial Commission, 1947, 65 Ariz. 373, 181 P.2d 620. The duration of the employment of an independent contractor often has a contemplated end. Here Miller had been working for petitioner for over ten years. It would be difficult to say that maintenance work of this type would cease prior to the termination of the business itself. Independent contractors often perform tasks requiring special skills. Such is not the case here. Moreover, the duties performed by Miller are not distinct from the business of petitioners. Petitioner Scott testified that Miller's services were used in the performance of his business. In view of the dimensions of petitioners' business it cannot be said that the maintenance work here was the type usually performed by independent contractors. Nor were the terms of payment indicative of an independent contractor relation. Independent contractors are frequently paid at the completion of a task, here Miller received regular monthly payments. The fact that petitioners carried Miller on their regular monthly payroll as an employee, and made the appropriate deductions from his salary for the employee's contribution to the Federal Social Security fund, is wholly at variance with the claimed relationship of independent contractor. The employer does not and is not required to make collections from the wages of truly independent contractors with whom the employer sustains that relationship.

While these considerations are not intended to be exhaustive it appears that the first finding of the Commission was based upon competent evidence. As there is no dispute as to the legal consequences of this finding we will turn to the second proposition advanced by petitioners.

Petitioners object to the finding of the Commission

"That the above-named deceased, while employed in the State of Arizona by the above-named defendant employer, sustained an injury by accident arising out of and in the course of his employment on October 21, 1952, which injury proximately caused his death on said date."

It appears that the decedent was employed by petitioners in their Holbrook, Arizona, mortuary, as an embalmer and assistant funeral director. His duties included operating the ambulance in response to emergency calls. Decedent either drove the ambulance or obtained assistance when it was necessary that he administer the oxygen kept in the ambulance. It was agreed by the parties that the administration of oxygen in the ambulance was part of petitioners' business.

On October 21, 1952 the Winslow branch of petitioners' business received a request

from the Holbrook office to meet its ambulance at the Winslow airport with oxygen. Petitioner Scott drove to the airport to meet decedent. In decedent's ambulance was a small child, suffering from poliomyelitis, and his parents. The child was to be flown to Phoenix, Arizona for medical treatment. Mr. Scott placed a resuscitator in the airplane. The father entered the plane with the child. No arrangements had been made by the parents for a nurse or doctor to make the trip with the child, as was usually the case. Mr. Scott then entered the plane to operate the oxygen equipment, if its use was required, but withdrew in favor of Rhyan when after some conversation it was determined that Rhyan was the lighter of the two. The plane was equipped to carry four passengers, including the pilot. Shortly after take-off the plane crashed killing all aboard.

The question presented is whether the Commission was correct in finding that the decedent Rhyan died in an accident "arising out of and in the course of his employment".

It appears that decedent entered the airplane in response to an emergency, not in the usual routine of his employment. Usually when a patient was transferred to an airplane the patient had either a doctor or nurse at hand to make the journey. While this act of decedent was unusual it does not necessarily follow that it was therefore outside the course of his employment. An emergency may expand the nature of the employment. Young v. Mississippi River Power Co., 1921, 191 Iowa 650, 180 N.W. 986. Humanitarian acts are not to be ignored in law merely because they are unusual. In 1 Larson, Workmen's Compensation Law, Section 28 at 427, is found the statement:

"Injury incurred in the rescue of a stranger is compensable if the conditions of employment place claimant in the position which requires him, by ordinary standards of humanity, to undertake rescue."

Here decedent was expected to administer oxygen in the ambulance. That an emergency might arise requiring him to administer oxygen in a place other than the ambulance would appear foreseeable if not foreseen. Puttkammer v. Industrial Commission, 1939, 371 Ill. 497, 21 N.E.2d 575. Decedent did not undertake the flight to Phoenix for his personal "pleasure or accommodation", Pacific Fruit Express Co. v. Industrial Commission of Arizona, 1927, 32 Ariz. 299, 258 P. 253, 256, 55 A.L.R. 975, and an employer does not cease to be such simply because no financial profit was expected. Gardner v. Trustees of Main Street Methodist Episcopal Church of Ottumwa, 1933, 217 Iowa 1390, 250 N.W. 740.

The court, in O'Leary, v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S.Ct. 470, 472, 95 L.Ed. 483, stated that for compensation to be granted,

"All that is required is that the 'obligations or conditions' of employment

'create the 'zone of special danger' out of which the injury arose."

 The employment of decedent put him into the position whereby this emergency required his assistance, which the employer recognized and in which he acquiesced. That the law would require an express order would be to assume abnormal indifference on the part of this employee. Petitioner stated that he could not stop decedent, any more than decedent could have stopped him. This may be literally true but petitioner Scott made no objection to decedent's acts. He understood that the decedent was subjecting himself to the risk of the flight to administer the oxygen and made no statement. The employer's permission need not be express but may be implied. Joshua Hendy Iron Works v. Industrial Accident Commission, 1946, 74 Cal.App.2d 191, 168 P.2d 203; Bentley v. Industrial Commission, 1951, 71 Ariz. 330, 227 P.2d 224. We must assume that both petitioners and decedent agreed that the oxygen equipment required an operator. One of them had to meet the emergency. While the O'Leary case, supra, did not turn on the permission of the employer, express or implied, but upon position only, we need not decide whether that in itself is sufficient. We intend here only to show that both position and permission existed.

The award is affirmed.

PHELPS, C. J., and STANFORD, UDALL and WINDES, JJ., concur.