500 P.2d 318

Ramon H. MONTANO, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Royden Construction Company, Respondent Employer,

Northwestern National Insurance Co., Respondent Carrier.

1 CA–IC 689.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 22, 1972.

Rehearing Denied Sept. 21, 1972.

Spencer K. Johnston, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Jennings, Strouss & Salmon, by M. Byron Lewis, Phoenix, for respondents employer and carrier.

CASE, Judge.

This matter is before us by writ of certiorari to review the lawfulness of a decision upon hearing and findings and award for noncompensable claim entered by the Industrial Commission.

On 7 October 1970, petitioner, while employed by Royden Construction Company, sustained an injury to his lower back. At the time of his injury, he was working as a laborer operating a jackhammer. Petitioner testified at the hearing that when he lifted the jackhammer upon the compressor, he felt a pulling in his back. He consulted a doctor and was hospitalized with a lumbosacral strain and sprain.

Petitioner filed a claim with the Commission, a hearing was held and the result was a finding and award of a noncompensable claim entered 27 April 1971. This appeal followed.

The sole question presented for our determination is: Was the award reasonably supported by the evidence?

This Court has consistently stated that upon review of an award of the Industrial Commission, the evidence will be considered in a light most favorable to sustaining the Commission's award. Scoggins v. Industrial Commission, 14 Ariz.App. 233, 482 P.2d 482 (1971); Dunham v. Industrial Commission, 4 Ariz.App. 575, 422 P.2d 406 (1967). This does not, however, compel us to accept a determination by the Commission when the record does not support that finding and award.

The record in this case indicates the testimony of two doctors, Dr. George O. Bryant, D. O., and Dr. O. Melvin Phillips, M.D., who stated that in their medical opinion the injury was related to the employment of petitioner.

Dr. Bryant's testimony was as follows:

"MR. JOHNSTON: Doctor, did you receive any type of a history as to what had—Did you receive any history from the applicant as to how this condition had occurred?

A. Yes. I do complete history and physical examinations on all patients that I see in the hospital.

Q. Will you tell us what that history was?

A. The patient gave a history of on 10-7-70 of having been engaged with work, using a jack-hammer, and at which time, during the course of his duties, he experienced an acute onset of pain in his right lumbosacral area with radiation of the pain down into the lower right extremity not extending below the knee.

Q. Doctor, did you formulate an opinion as to whether the condition as you found it to exist at the time of your examination was or was not related to the incident as he related it to you?

A. As the patient related it to me, I felt it was related to the incident.

*        *        *        *        *        *·

MR. JOHNSTON: Doctor, you having answered that he could not have done the work that he was doing at the time he was injured, at the time it did exist,

at the time you examined him, would you feel it more likely that the conditions of his employment did in fact cause the condition as you found it to exist at the time you examined him?

A. I felt that the condition could have been caused by his employment as the history was related to me."

The examination of Dr. Phillips by petitioner's attorney and respondents' attorney respectively was as follows:

"Q. Doctor, let me just ask you these questions: Let us assume just for the sake of an assumption here in asking my question that Mr. Montano went to work on the morning of the 7th; he had said, Well, my back is sore and is bothering me. He swung a sledge hammer for a half hour. He operated a jackhammer for the balance of a two and a half hour period, two and a half hour period meaning he swung the sledge hammer and operated a jackhammer, which it is testified weighed sixty pounds, and did it not only vertically, but horizontally, so he had to hold his body against the side of the bridge. And he stated at the conclusion of operating that when he bent over to pick it up, he felt a pull in his low back.

And then you have the history that he went to the Tempe Community Hospital that night and was seen by Dr. Robbins the following morning. Then you saw him on the 10th.

Would you have an opinion as to whether, in the cause of his problem insofar as incident, it would more likely be concerned with the history of the accident as he described and the activity of that employment?

A. Yes.

*        *        *        *        *        *

Q. Doctor, your answer to that question would it depend also in good measure on the amount of discomfort or trouble that Mr. Montano was having with his back before he started to work on that morning, wouldn't it?

**60**

A. Based on that particular history, it would certainly appear that he was capable of doing those activities for a period of time. And he probably did not have as severe a sprain as he did after performing this activity. This would be my conclusion on it.

Q. But if the sprain was just as bad before he started to work as it was after he started to work, then, of course, your answer would be different?

A. He couldn't have done that kind of work with the sprain that I saw him with."

The record indicates a conflict in the testimony of the petitioner and the respondent employer's foreman as to a preexisting injury. However, as the testimony of the doctors indicates, petitioner could not have worked with the injury complained of when examined by them. Even assuming that petitioner had a preexisting condition, it could not be denied that the incident complained of would have aggravated that condition. In this regard, "the principle is well established that a preexisting disease or infirmity does not disqualify an employee from compensation" where the injury produces further disability. Montgomery Ward Co. v. Industrial Commission, 14 Ariz.App. 21, 480 P.2d 358 (1971); Gullick v. Industrial Commission, 94 Ariz. 237, 383 P.2d 123 (1963); Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960).

This Court has held that:

"An industrial injury need not be the sole cause, as long as it appears that the injury contributed to and accelerated the inevitable. The injury need not be the sole cause of disability (or death) if it is a producing cause. (citations omitted)." Romero v. Industrial Commission, 11 Ariz.App. 5, 461 P.2d 181, 183 (1969).

This Court has also held that where the evidence before the Industrial Commission was such that the only rational conclusion that could be drawn was one of a causal connection between the employ-

ment and the injury, a determination that the injury was not causally connected is arbitrary. Thiel v. Industrial Commission, 1 Ariz.App. 445, 404 P.2d 711 (1965). The instant case follows the reasoning of that case, and as we said in Mokma v. Industrial Commission, 9 Ariz.App. 88, 449 P.2d 622 (1969), when the evidence before the Commission is such that the only interpretation is one that leads to a different conclusion than the one reached by the Commission, the Court has no alternative but to set aside the award.

The award is set aside.

STEVENS, P. J., and DONOFRIO, J., concur.