531 P.2d 171

**STATE COMPENSATION FUND, and City of Phoenix, Petitioners,**

v.

**Ernest E. LE DESMA, Respondent Employee,**

**The Industrial Commission of Arizona, Respondent.**

**No. 1 CA–IC 999.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 28, 1975.

Rehearing Denied March 4, 1975.

Review Denied April 15, 1975.

Robert K. Park, Chief Counsel, State Compensation Fund by R. Kent Klein, Phoenix, for petitioners.

Shimmel, Hill, Bishop & Gruender, P. C. by J. Russell Skelton, Phoenix, for respondent employee.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

## OPINION

STEVENS, Judge.

This appeal must determine whether there is reasonable evidence to support The Industrial Commission's finding that Ernest Le Desma, the respondent employee, was an employee of the City of Phoenix under the workmen's compensation laws of this State.

Ernest Le Desma (Le Desma) was injured on a field trip in the Oak Creek Canyon while supervising a group of inner-city youngsters taken there under the auspices of the Barrio Youth Project (BYP) on 29 July 1972. Le Desma was uncertain of the actual identity of his summer employer and consequently filed claims against the City of Phoenix on 25 September 1972; against the County of Maricopa Board of Supervisors on 10 October 1972; and against the BYP on 9 January 1973. The claim was denied on 12 October 1972 by the State Compensation Fund on behalf of the City of Phoenix (City) by a notice of claim status asserting that the claimant was not in the employ of the City of Phoenix at the time of the injury. The claim against the County of Maricopa Board of Supervisors was denied on 4 December 1972 for a similar reason. The claim against the BYP was denied because the BYP was not an insured of the State Compensation Fund at the time of the alleged injury. The claimant filed a timely request for a hearing and formal consolidated hearings were held on 22 February and 6 March 1973. On 10 April 1973, the hearing officer filed a Consolidated Decision Upon Hearing and Findings And Award finding that the City of Phoenix

was the employer of Le Desma and made the award payable to Le Desma by the City of Phoenix and its insurer, the State Compensation Fund. A request for review was filed and on 21 May 1973 The Industrial Commission affirmed the hearing officer in its Decision Upon Review Affirming Consolidated Decision Upon Hearing And Findings And Award.

In order to answer the question presented for review, we must examine the record and dissect the intricate relationship among federal, county and city agencies. Le Desma was officially an employee of the BYP. BYP is a non-profit corporation and it essentially serves the inner-city area by operating a print shop to train inner-city youth, in the printing business. This operation exists due to a contract between the City and the BYP. The trainees for the printing shop are selected by the BYP but get paid by a City paycheck and the City provides workmen's compensation insurance, both paid for by federal funds. In 1971 and 1972, the BYP also provided recreational programs for children, ages 8–13, who are too young to work and who live in the inner-city areas.

In 1970, the City received $144,000 from the Department of Labor to provide a summer recreation program for inner-city youth. This was known as the Recreation Support Program and the Department of Labor provided a certain set of guidelines as to how this money could be spent. The first year, the City administered the program and hired all the employees. The payroll staff signed them up, fingerprinted them and even purchased all necessary supplies through its purchasing department. In 1971, the second year of the program. the City decided to change its method of operation and divided the federal money by providing $100,000 to the Recreation Support Program, which is a separate City agency that provides an extension of the programs provided by the City Parks and Recreation Department. The Recreation Support Program, due to the nature of its funding, existed only during the summer-

time. The other $44,000 was divided among non-governmental agencies.

The agencies applied for the money by presenting a summer program together with its cost to the Leisure Group Work Services Conference from the Community Council which is primarily composed of United Fund. agencies. The Leisure Group Work Service Conference was required to keep the total money granted to these agencies within the $44,000 limit. The power of final approval rested with the City's Parks and Recreation Department. Some 15 to 18 agencies were granted funds, including the BYP, The Boy Scouts, The Girl Scouts, the Campfire Girls, the YMCA and the South Mountain Y. These agencies, with the exception of the BYP, used these extra funds to support and. expand their usual activities. All of the additional help was paid by City paychecks.

The BYP is the youth component of the Chicanos Por La Causa, another non-profit corporation whose activities are essentially housing and economic development of the inner-city area. The BYP had not been involved in recreational programs in the past. When the federal funds were made available, the BYP proposed a summer recreation program and applied to the City for the funds to pay for it. The BYP applied for $6,418 and received $3,000 for a summer recreation program. The BYP drew against these funds to pay its employees who were paid by City checks.

In 1972, the City made further changes in the program. The same agencies applied for and received similar amounts of money but thereafter the additional personnel hired by the agencies were paid by their respective agencies. The agency would turn in a claim for money, such as payroll and supplies, to the City Recreation Support Program which would approve the claims, forward them to the County Neighborhood Youth Corps which would in turn pay the agencies from the federal funds that it held. The agencies would then take this money and pay its own staff. This

was the situation when Le Desma was employed by the BYP.

Le Desma was hired by the BYP in June of 1972 as the assistant director of the summer recreation program. He was hired by Mike Rojas who was the director of the summer recreation program provided by the BYP. Le Desma's employment was approved by Earl Wilcox who was the director of the BYP. Le Desma and Rojas were paid from the bank account of the BYP and their W-2 forms were imprinted with the BYP, as their employer. Wilcox, however, was paid by the Chicanos Por La Causa, the parent organization of the BYP.

Le Desma, as Assistant Director, supervised the children together with Rojas, while they engaged in sports and creative activities. The BYP used its own building, as well as the facilities of the Lowell Elementary School and a room located in the Marcos DeNiza housing project for its activities. In addition, City parks and City swimming pools were also used. The Recreation Support Program would either provide free swimming passes to the BYP or the BYP made unofficial arrangements with the personnel managing the pools to admit the children free. The BYP would also utilize activities sponsored by the City such as watermelon busts and pie-eating contests. The Summer Recreation Program included field trips in its activities and the inner-city children, including those of the BYP, were taken on a voluntary basis to the San Diego Zoo and Oak Creek Canyon among other places.

On 29 July 1972, the BYP organized a field trip to the Oak Creek Canyon. This trip was completely independent of all city and county agencies. Le Desma contacted someone at Luke Air Force Base which provided a bus for transportation. Le Desma, Rojas and a volunteer supervisor accompanied the children. It was on this trip that Le Desma slipped in the area of the "Slide Rock", fell and seriously injured himself. This injury is the basis of the claim now under consideration.

On 10 April 1973, the hearing officer filed a Consolidated Decision Upon Hearing And Findings And Award. He found that "the ultimate supervision and control of Barrio's entire recreational program, at the time here pertinent, was vested in the City of Phoenix * * *." He based this finding on the fact that BYP was required to apply for funding to the City, that although a separate committee made recommendations the City had the power of final approval of the funding, that the City specifically designated that $2,400 was for wages and $600 for supplies, and that it was this money that enabled the BYP to hire Le Desma. Further findings included that the City "checked" the program of the BYP, that City property was used for the recreational activities, that the payment was on a "regular" basis rather than in a lump sum and that the City could have eliminated the BYP's recreation program either by declining to allocate funds at the outset or by withholding funding.

The hearing officer found the City liable for Le Desma's injuries on the rationale that the BYP is not an independent contractor but is "merely a 'subcontractor' in the 'trade or business' and under the 'supervision or control' of" the City. To determine if this is supported by the evidence, we must focus our inquiry on the degree of supervision and control exercisable by the City. We do not look to the actual exercise of this power but rather to the existence of this power in the City. Posey v. Industrial Commission, 87 Ariz. 245, 350 P.2d 659 (1960); Scott v. Rhyan, 78 Ariz. 80, 275 P.2d 891 (1954); Employers Mutual Liability Ins. Co. of Wis. v. Industrial Commission, 18 Ariz.App. 403, 502 P.2d 1080 (1972).

It must be recognized, at the outset, that the BYP performed a service that is generally considered to be one of the functions of the City, i. e., recreational programs for the City's children. The funds granted to the BYP originated with the Department of Labor. The funds, like most money from the federal government, came with

strings attached. Some of the guidelines established by the Department of Labor are as follows: The program had to start after the school year was over and end before the next school year started; the program was for children of ages 8–13; the funds were to be used in the lower socioeconomic area of the City; no capital items could be purchased in excess of $100 and all purchased items were required to be a "consumable type item." The City, under the terms of the grant, was required to insure that these guidelines were followed in expending this money.

The hearing officer found that the ultimate supervision and control of the BYP's recreation program was vested in the City. The testimony at the hearing is unequivocal that although City personnel regularly inspected the BYP activities, their main concern was to make a head-count of the number of children attending these functions. This procedure was followed because of the complex accounting system utilized with these funds and to prevent inflated attendance figures by agencies claiming these funds. In the words of Director Rojas, "We had to again attain a certain quota. And after attaining this quota we would submit a claim form specifying the number of day campers, they were called. And from there we would request our money * * *. And they monitor some of our programs to see that we were attaining this quota. If we said we had 50 kids we had to have 50 kids."

The basis for the hearing officer's findings are applicable to all agencies applying for this money. All the agencies were required to apply to the City for funding under this program, each application was considered by a committee for approval but the City had the power of final approval; the City specifically designated how the granted funds were to be expended; the City inspected the progress of all of the programs and the City, through a county check, made payments on a "regular" basis rather than a lump sum (in the case of the BYP, two payments of $1,500 each). Although all of these factors are present for all the agencies, it could not be seriously contended that The Boy Scouts, The Girl Scouts, the Campfire Girls and the others came, by virtue of this funding, under the ultimate control of the City.

One distinction between the BYP and the other agencies is that without the funds approved by the City, the BYP summer program would not have existed. Pepe Martinez, a member of the Board of Directors of the BYP, testified that the BYP applied unsuccessfully to other nongovernmental agencies for funds. The fact that the City was the only entity allocating money to the BYP activities cannot now be construed to mean that the City controlled the BYP.

The hearing officer emphasized that the BYP used City facilities for most of its activities. The BYP used the City's public parks for some of the sports activities but anyone can use the public parks. The BYP also obtained free swimming passes for City pools from the Recreation Support Program. The BYP children were also allowed unofficially to swim for free by the managers of several City swimming pools. The BYP was also allowed to use the facilities of the Lowell Elementary School but Rojas testified that since he worked at the school he arranged this through the school's principal. The BYP used an empty room at the Marcos DeNiza housing project but Le Desma testified that the manager of the project allowed them to do this. Le Desma also repaired the building when the children damaged it through their activities. The way these activities were arranged indicates that the BYP benefited from the goodwill of individuals rather than official City action. The BYP also attended field trips, watermelon busts and pie-eating contests organized by and paid for by the Recreational Support Program. The testimony by all parties was that the agencies were not required to attend these but rather, were notified that it was available if they wished to attend. We believe that none of these activities substantiate a finding that the City was in control of the BYP.

The most important indicia that the City did not have "ultimate supervision and control" of the BYP is found in the way that Le Desma was employed. Mr. Wilcox, the Executive Director, testified that he required that any prospective employee "had to have some leadership ability, supervision ability, how to implement recreational programs, have some background in dealing with kids. He had to be bilingual, Mexican, because of the people that we come in contact with." He testified that he set these standards himself. Le Desma was hired by Rojas, the summer director, with the approval of Wilcox. The City did not concern itself with who was hired by these agencies and had no authority to dismiss any of them. Wayne Korinek, the Special Services Supervisor for the recreation division of the Parks and Recreation Department testified that "it was not the City staff's responsibility or RSP's (Recreation Support Program) responsibility to run a program at a particular facility that was not owned and operated by the City. In other words, the Girl Scouts have their own budget and their own programs, we are not going to go in and run the Girl Scouts' program. They are much better qualified and better taught in the area of Girl Scouts to run that program. So we can provide maybe the funds to do it, it's their responsibility to find the leadership and the know how." (The Girl Scouts were used as an example.)

While all the witnesses agreed that the decision to employ Le Desma was the BYP's, Wilcox testified that he was required to prepare a resume for Le Desma to submit to the City. He didn't know who asked for the resume or to whom it was submitted. Korinek testified that the City did not inquire into the hiring policies of any specific agency and even Wilcox testified that he didn't think the City could tell him whom to employ. Finally, Rojas and Wilcox testified that they would have fired Le Desma if the City had requested it. They stated they would do this in order not to jeopardize the funding of the program for future years but they never stat-

ed that the City actually had the authority to fire Le Desma. They also testified that they never encountered any negative control from the City and in fact, they were never required to do anything by the City except provide a summer recreation program for the children.

■ We hold that the Commission's finding that, "The ultimate supervision and control of Barrio's entire recreational program * * * was vested in the City of Phoenix." is not supported by reasonable evidence in the record.

Award set aside.

OGG, P. J., and WREN, J., concur.