534 P.2d 1090

David R. REED, Deceased, Peggy Sue Reed, widow, Cynthia Rene Reed and Mildred Elaine Reed, Individually and by their guardian ad litem, Peggy Sue Reed, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Movers Port Service of California, Respondent Employer,

St. Paul Fire & Marine Insurance Company, Respondent Carrier,

Rocky Ford Moving Vans or Movers Port Service, Inc. of Midland, Texas, Respondent Employer,

Northwestern National Insurance c/o Crawford & Company, Respondent Carrier.

No. 1 CA–IC 1063.

Court of Appeals of Arizona, Division 1, Department C.

May 13, 1975.

Rehearing Denied June 13, 1975.

Review Denied July 10, 1975.

**592**

Machmer, Schlosser & Meitz, P. C. by Ronald M. Meitz, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lewis & Roca by Merton E. Marks, Phoenix, for Movers Port Service of California and St. Paul Fire & Marine Ins. Co.

Jennings, Strouss & Salmon by Michael W. Mullane, Phoenix, for Rocky Ford Moving Vans and Northwestern National Ins.

## OPINION

STEVENS, Judge.

This Court has been petitioned to review the award of The Industrial Commission of Arizona to determine whether the award finding that the deceased was an independent contractor and not an employee is reasonably supported by the evidence.

■ David R. Reed (Reed) was driving his truck through Arizona on 25 July 1971 when he was involved in an accident near Benson in which he was killed. His widow, Peggy Sue Reed filed her "Widow's Claim for Compensation." Movers Port Service of California (Movers of California) and Rocky Ford Moving Vans (Rocky Ford) were alleged to be Reed's employers. The respective insurance carriers denied the widow's compensation because both firms maintained that Reed was not an employee. After several depositions and a hearing in Midland, Texas, the hearing officer (on 29 August 1973) issued his Consolidated Decision Upon Hearing and Findings and Award Denying Death Benefits. The hearing officer found that the employer-employee relationship had not been established and that Reed was an independent contractor and not an employee of either of the firms alleged to be an employer. After a requested review, the hearing officer affirmed his original decision. The case is before the Court upon a writ of certiorari. Our review will consider the evidence in a light most favorable to sustaining the Commission's award. Spears v. Industrial Commission of Arizona, 20 Ariz.App. 406, 513 P.2d 695 (1973); Montano v. Industrial Commission of Arizona, 18 Ariz.App. 58, 500 P.2d 318 (1972).

■ Initially, we must note that Rocky Ford urges that the petitioners waived their right to appeal the hearing officer's decision as to Rocky Ford. Rocky Ford urges that the memorandum attached to petitioners'. request for review argued only that Movers of California was Reed's employer and that this was the only question that the hearing officer reviewed. Thus, it is urged, the petitioners failed to exhaust their administrative remedies as to Rocky Ford before coming to this Court and that this Court is without jurisdiction to consider the matter. A.R.S. § 23–943 provides that requests for review of a hearing offi-

cer's award need only state that a party requests a review of the award. The request may be accompanied by a memorandum of points and authorities but this is not necessary and the hearing officer reviews the entire award. The award was required to be reviewed as it applied to both alleged employers and petitioners did exhaust their administrative remedies before the Commission. This Court has jurisdiction to review the entire award.

One of the alleged employers is Movers Port Service, Inc. of Midland, Texas. The hearing officer found that the only connection of this alleged employer with the case is that Howard Ford is the owner of both Rocky Ford and this alleged employer and that this name is similar to the name of Movers of California.[1] Movers Port Service of Midland, Texas, is a separate corporation and is not engaged in interstate commerce. The claim against this alleged employer was summarily denied. In this finding we concur and none of the parties contend that Movers Port Service, Inc. of Midland, Texas, was an employer of Reed.

Reed was required to follow a complex series of rules and regulations in the operation of his rig while hauling goods for Movers of California. The petitioners contend that the quantity and quality of these regulations establishes that Reed was an employee of either Movers of California or Rocky Ford.

The statutory guidelines to determine whether individual is an employee or an independent contractor are provided by A.R.S. § 23–902, as follows:

"B. When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

"C. A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section."

Basically, it is the right to control the method of reaching the desired result which determines whether an individual is an employee or an independent contractor. Employers Mutual Liability Insurance Co. v. Industrial Commission of Arizona, 18 Ariz.App. 403, 502 P.2d 1080 (1972); Nochta v. Industrial Commission of Arizona, 7 Ariz.App. 166, 436 P.2d 944 (1968). To determine the right to control, one must look to the totality of the facts and circumstances of each case examining the sign posts or indicia of control.

Reed owned the tractor and trailer that he drove. In June of 1971, he contacted Movers of California in its Houston office. He and his wife spoke to James Cook, the manager of the Houston office. Cook and Reed agreed that Reed would haul freight for Movers of California. Movers of California, within the United States, transported military household goods that were involved in international commerce. Movers of California did not have the necessary Interstate Commerce Commission (ICC) license to haul these goods but through a lease agreement with Rocky Ford, who was the owner of the ICC license required of common carriers who transport goods in interstate commerce, Movers of California was able to engage in interstate hauling. Movers of California paid Rocky Ford a percentage of the revenue derived from the use of the license.

---

1. The relationship of Reed and Movers of California and James Cook, its manager, will be discussed later in the opinion.

■ What was the relationship between Reed and Rocky Ford? Rocky Ford, as the owner of the ICC license, required that all drivers who hauled under its license, conform to all the ICC regulations. For this reason, Reed had to take a written examination and a driver's test at Rocky Ford's place of business. An employee of Rocky Ford, a duly qualified examiner of the ICC, administered these tests. Reed passed and received his license, cab identification card and a sign that he had to post on his cab stating that the rig was leased to Rocky Ford together with Rocky Ford's ICC permit number. Reed was also limited to the number of hours that he could drive in a day and was required to submit the "driver's logs" required by the ICC. Howard K. Ford, the owner of Rocky Ford and Movers Port Service of Midland, Texas, testified at the hearing. He stated that any driver who would violate the ICC regulations in a significant manner would not be allowed to drive under his ICC license. While Ford could not terminate any driver of Movers of California as such, he would tell Movers of California that the driver could not drive under Rocky Ford's license which, in effect, would terminate the driver. Reed's tractor and trailer and related equipment had to pass Rocky Ford's inspection but it is clear that Rocky Ford was only enforcing the ICC regulations that it was required to follow. The evidence is clear that Rocky Ford never paid Reed and that Rocky Ford had no interest as to who would drive for Movers of California as long as they met ICC requirements. As Rocky Ford argues in its brief, one can say that Reed paid Rocky Ford for the right to use their license. There is simply no evidence to substantiate a claim that Rocky Ford was the employer of Reed.

We will now examine the relationship of Reed and Movers of California. One factor to be considered in employer-employee or independent contractor situations, is whether the work performed was in the usual and regular business of the alleged employer, A.R.S. § 23–902(B). There is

no dispute that the transportation of goods is in the usual and regular business of Movers of California but this is also the usual and regular business of Reed as an owner-operator of the tractor-trailer rig. Reed, as an ICC licensed truck driver, possessed a particular skill for the job. Another indicia is whether the alleged employer or the employee furnishes the tools and equipment necessary to perform the task. In this case, Reed owned his tractor-trailer and owned the chains and tarpaulins necessary for the job. Reed also paid for the maintenance of the rig and for the diesel fuel he used. He was not reimbursed for these expenditures. Movers of California did deduct 10% of the revenue that Reed earned but this was sent to the ex-owner of the rig as payments for its purchase.

"The duration of the employment of an independent contractor often has a contemplated end." Scott v. Rhyan, 78 Ariz. 80, 83, 275 P.2d 891, 893 (1954). Movers of California generally required the owner-operators to sign a contract for one year. It could not be determined if Reed signed such a contract, but Cook testified that this did not alter the relationship between the parties. We note that while this contract provided that the owner-operators would haul goods for Movers of California, the contract did not specify when or where this would be done. Apparently, the owner-operators would haul goods as needed by Movers. The owner-operators could also refuse to haul any particular shipment. Furthermore, the owner-operators could haul goods for other movers between jobs for Movers of California.

"Independent contractors are frequently paid at the completion of a task * * *." Scott v. Rhyan, supra, 78 Ariz. at 83, 275 P.2d at 893. Reed was paid at the completion of his task. For example, Reed would haul goods from Houston, Texas to Sacramento, California and he would be paid at a certain rate per mile. He would also be paid for each "drop" he had to make, which is, in trucker's parlance, a stop to load or unload goods on the truck. The

mileage that he was paid for was not the actual miles driven but the number of miles shown on the "Contractor's Rates and Charges" as the distance between two particular cities. The owner-operators hauling goods for Movers of California would be paid for each trip as it was completed. "The employer does not and is not required to make collections from the wages of truly independent contractors with whom the employer sustains that relationship." Scott v. Rhyan, supra, 78 Ariz. at 83, 275 P.2d at 893. Movers of California did not deduct from Reed's payment any state or federal income tax payments nor Social Security payments.

■■■ Another standard to consider is who established the standard of performance that an individual must meet. Blasdell v. Industrial Commission, 65 Ariz. 373, 181 P.2d 620 (1947). The petitioner cites numerous items that purportedly show that Movers of California set the standards applicable to Reed. Petitioner claims that Reed had a direct supervisor, Cook, to whom Reed had to answer. The evidence is that Reed had to call Cook, by long distance telephone, to report in if he arrived at destinations when the load he was to pick up was not ready or to find out if there were loads that he should pick up. The testimony is clear that Movers of California attempted to control the "result" rather than the "method" of a particular job. Obviously, if Reed's load was unavailable, he could not accomplish the result contracted for, that is to move these particular goods. It is also clear that Movers of California would tell him to pick up certain goods that were available after he left from his home base in Houston. This again indicates that Movers of California wanted to control the "result" because these goods had to be moved.

Petitioner claims that the exact routes and destinations of Reed were dictated by Movers. Each driver was given a "run sheet" before he started which would tell him what cities he was required to stop in to pick up a load. A "run sheet" did not tell Reed what route he must follow. Cook

testified that Reed could go from Houston, Texas to Long Beach, California by the way of Chicago, Illinois if he wanted to as long as he stopped in the right places to pick up his loads.

Petitioners claim that Reed could be terminated if he did not adhere to Cook's instructions. The evidence is that, indeed, Reed could be terminated if he failed to conform to ICC, Department of Transportation or Military Terminal, Military Terminal Service (MTMTS) regulations. All drivers in interstate commerce must obey ICC and Department of Transportation regulations as conditions of keeping their license. MTMTS regulations prescribed arrival times and the methods of packing, loading and chaining military household goods. Any moving company, such as Movers of California, had to accept and conform to these rules as a prerequisite to hauling goods for MTMTS. These rules were not imposed by Movers of California as a means of controlling the owner-operator but were rules imposed by governmental agencies on Movers of California which, in turn, imposed them on its drivers.

The petitioners next urge that the "exact numbers of parcels delivered and picked up at various destinations" were directed by Movers of California. We do not see how Reed could operate as an employee or an independent contractor engaged in transporting goods unless he was told how many parcels he was to pick up and deliver. Reed was also told how to handle the paperwork at the destinations. Reed was required to have the bills of lading signed as this was the proof that he delivered the goods. Bills of lading are also required as a control device for the shipments.

Petitioners next urge that "Preferred arrival dates were stated, which had to be stringently adhered to by the drivers * * *." The evidence shows that these preferred arrival dates were set by the ICC and the MTMTS and they required Movers of California to adhere to these dates. Movers of California, in turn, would require the drivers to adhere to these

dates. Reed was also prohibited from taking passengers in his truck unless expressly approved by Movers of California. The evidence, however, is that this requirement was imposed on Movers of California by Rocky Ford. Rocky Ford imposed this requirement because the ICC imposed this regulation on it. Reed was also required to keep daily logs, but this was another ICC regulation imposed on Reed through Movers of California and Rocky Ford.

One last point to be considered is that "The complete handling of all cargo was controlled by [Movers of California]. This includes tarping, the method of packing, the cartons, the chain and boomering of the parcels and the loading of the parcels and tailgate regulations." The evidence is uncontradicted that Reed did not load his truck nor pack the cartons he carried. He was required to tarp the loads he carried and he was required to chain them and to secure them with the "boomer" which is a clasp for the chain. These were regulations imposed by MTMTS, which had very specific rules as to how the household goods of military personnel had to be transported.

Upon a complete review of the evidence, we are convinced that the well-reasoned and documented award of The Industrial Commission must be affirmed. To quote the hearing officer, "it must be concluded that Reed was in fact, and was intended to be by both Reed and Movers, an independent contractor' and not an employee of Movers."

The award is affirmed.

NELSON, P. J., and DONOFRIO, J., concur.