545 P.2d 465

**EL DORADO INSURANCE COMPANY, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Florida Continental Express, Respondent Employer,**

**Norman A. Tanner, Respondent Employee.**

**No. I CA–IC 1363.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 29, 1976.

Rehearing Denied March 4, 1976.

Review Denied April 13, 1976.

Slutes, Zlaket, Sakrison & Wasley by John A. Wasley, Tucson, for petitioner.

Greg L. Folger, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Strong & Pugh, P. A. by William K. Strong, Phoenix, for respondent employee.

## OPINION

NELSON, Presiding Judge.

Two issues are presented on review of this award of the Industrial Commission. The threshold issue is whether the business relation of respondent Norman A. Tanner and his deceased wife, Theresa L. Tanner, with Florida Continental Express was that of employees or independent contractors.

The second issue goes to the question of whether Norman Tanner must show some dependency on his wife, Theresa Tanner, to entitle him to widower's benefits under A.R.S. § 23–1046(A). A connected question deals with the constitutionality of the conclusive presumption of dependency found in A.R.S. § 23–1064.

Norman and Theresa Tanner were engaged in their occupation of truck driving when they were involved in a one vehicle accident near Hydro, Oklahoma on May 26, 1974. Theresa Tanner died at the scene of the accident. Norman Tanner survived the accident and sustained various injuries, including bruised buttocks, thighs and spleen, torn muscles in the left upper arm, and a broken rib.

On July 8, 1974, Norman Tanner filed a claim for injuries resulting from the May 1974 incident. Tanner alleged that the occurrence arose out of and in the course and scope of his employment with the employer, Florida Continental Express.

On July 31, 1974, the insurance carrier, El Dorado Insurance Company, petitioner herein (El Dorado), issued its notice of claim status denying the compensability of the claim on the basis that Tanner was not an employee of Florida Continental Express. A widower's claim was also filed on July 8, 1974. Tanner alleged that his wife's death arose out of and in the course and scope of her employment. This claim was also denied on July 31, 1974. A consolidated hearing was held in these matters on December 12, 1974.

In order to resolve the first issue it is necessary to analyze the Tanners' work status from the perspective of both statutory and case law guidelines. A.R.S. § 23–902 sets forth the statutory guidelines to determine whether an individual is an employee or an independent contractor as follows:

"B. When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or

process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

C. A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section. As amended Laws 1973, Ch. 136, § 2, eff. Jan. 1, 1974."

The governing aspect of the test explained in the case law is the right to control the method of reaching a desired result. *Reed v. Industrial Commission of Arizona,* 23 Ariz.App. 591, 534 P.2d 1090 (1975); *State Compensation Fund v. Le Desma,* 23 Ariz.App. 126, 531 P.2d 171 (1975); *Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission of Arizona,* 18 Ariz.App. 403, 502 P.2d 1080 (1972); *Nochta v. Industrial Commission of Arizona,* 7 Ariz.App. 166, 436 P.2d 944 (1968). As we stated in *Reed,* supra, "To determine the right to control, one must look to the *totality of the facts and circumstances of each case* examining the sign posts or indicia of control." 23 Ariz.App. at 593, 534 P. 2d at 1092. (Emphasis supplied). None of these indicia is in itself conclusive. When taken together and applied to a particular set of facts, the classification of an individual as an employee or indpendent contractor becomes more clear. *Blasdell v. Industrial Commission et al.,* 65 Ariz. 373, 181 P.2d 620 (1947). In making the analysis it must be remembered that it is not the exercise of the power to supervise and control, but rather its existence which is to be considered. *Scott v. Rhyan,* 78 Ariz.

80, 275 P.2d 891 (1954); *Industrial Commission v. Meddock,* 65 Ariz. 324, 180 P.2d 580 (1947).

Other indicia set forth by the cases include: the duration of the employment, the method of payment, the standard of performance the individual must meet, the collection from wages for state and federal income tax, social security payments and workmen's compensation premiums. See e. g.: *Scott v. Rhyan,* supra; *Blasdell v. Industrial Commission,* supra; *Daggett v. Nebraska-Eastern Express Inc.,* 252 Iowa 341, 107 N.W.2d 102 (1961); and *Hansen v. Adent,* 238 Minn. 540, 57 N.W.2d 681 (1953).

El Dorado urges that the opinion of the court in *Reed v. Industrial Commission of Arizona,* supra, is dispositive of the first issue—mandating the classification of the Tanners as independent contractors, rather than employees. We do not agree. While the *Reed* case and the instant case are similar in many respects, there are, as the hearing officer found, important distinctions in the facts and circumstances of the two cases.

Reed, a truck driver, was killed in an accident near Benson, Arizona. His widow's claim for compensation was denied on the basis that Reed was not an employee. The hearing officer agreed with this position. In analyzing the "right to control", the Court in *Reed* looked to the specific facts and circumstances. Each factor analyzed can be contrasted with the Tanners' case. Reed owned the tractor and trailer that he operated as well as the chains and tarpaulins necessary for the job. Norman Tanner owned only the tractor that he drove. The trailer and the equipment on it were obtained from Florida Continental Express.

In *Reed,* supra, the Court emphasized the fact that Reed evidenced a particular skill for the job. Inasmuch as the Tanners held good driving records and were a desirable driving team, they too demonstrated skill. The presence of a skill is not, however, sufficient to characterize the Tanners as independent contractors.

Under Reed's contract with Movers of California, an owner-operator would haul goods as needed, could refuse to haul any particular shipment, and could haul goods for other movers between jobs. Under the agreement with Florida Continental Express, Tanner could not perform services for other employers. Reed was paid at the completion of a task. The Tanners were paid on an approximate weekly basis with payments amounting to 25% of gross revenue. This 25% was apportioned between them so that the payment amounted to 12½% apiece. Movers of California did not deduct any state or federal income tax payments from the amount Reed was paid, nor did it deduct any social security payments. The Tanners' wage earnings were subject to withholding for taxes. Social security information was also shown on the payroll records. Workmen's Compensation premiums were paid on the Tanners' wages.

Other salient factors in the hearing officer's determination that the Tanners were employees rather than independent contractors include the facts that the Tanners made out an "Application for Employment" and that there was a separate and distinct leasing situation.

 *Reed* requires that an analysis of the right to control be done on a case-by-case basis. The hearing officer below considered various documents and exhibits in the file as well as other relevant factors. It was his conclusion that *in this case* the facts established an employer-employee relationship. Where an award is made the inquiry goes to whether or not there was sufficient evidence to warrant the decision made by the trier of fact. *Daggett v. Nebraska-Eastern Express, Inc.,* supra. After a careful review of the record, we find that there was sufficient evidence to warrant the decision of the hearing officer

that the Tanners were employees of Florida Continental Express Company. It is not the role of this Court to weigh the evidence. We must view the evidence in a light most favorable to sustaining the award. *Malinski v. Industrial Commission of Arizona,* 103 Ariz. 213, 439 P.2d 485 (1968).

As to the second question here for review, it is argued by El Dorado that Norman Tanner must show some dependency upon Theresa Tanner to entitle him to death benefits under A.R.S. § 23–1046. Respondent Tanner was awarded death benefits under A.R.S. § 23–1046(A)(2) read in conjunction with A.R.S. § 23–1064(A)(2) which provides that a husband is conclusively presumed to be totally dependent upon a wife whom he has not voluntarily abandoned at the time of the injury.

 El Dorado further argues that the Arizona Constitution, Art. 18, § 8, mandates a determination of dependency prior to a compensation award. This is not the case. The constitutional provision states that dependents will be defined *by law.* This phrase clearly stands for the proposition that the Legislature is free to define "dependents" as it sees fit. Presumably this is what the Legislature has done in enacting A.R.S. § 23–1046 and A.R.S. § 23–1064.

 Prior to 1973, A.R.S. § 23–1064 allowed the dependency presumption to apply to a husband only if he was "mentally or physically incapacitated from wage-earning", and had not abandoned his wife at the time of the injury. In 1973 this requirement was eliminated from the statute. On the surface it would seem that the 1973 revision evidences an effort by our Legislature to insure male and female workers equal treatment in terms of compensation for their dependents.[1] As we stated in

---

I. The statute prior to 1973 read:
"23–1064. Presumptions of dependency; determination
 A. The following persons are conclusively presumed to be totally dependent for support upon a deceased employee:

1. A wife upon a husband whom she has not voluntarily abandoned at the time of the injury.

2. A husband, mentally or physically inincapacitated from wage earning, upon a

*Padilla v. Industrial Commission of Arizona,* 24 Ariz.App. 42, 535 P.2d 634 (1975):

"In the past it was reasonable to as-. sume that the primary source of family income was the employment of the husband/father. More likely than not, dependents were totally dependent upon the income of the husband/father to finance necessary living expenditures. Under such circumstances, in the unfortunate event that the husband/father were industrially injured he would be entitled to the additional compensation provided in A.R.S. § 23–1045.A.2.

"The complexities of modern life have increased the financial requirements of individuals and of families. Where it may have been an infrequent occurrence to find a working mother/wife in 1939, it is now often the normal situation. To ignore this development is to blatantly ignore an actual fact: family financial needs now regularly require that each parent or spouse participate in the generation of income. The inescapable consequence of this fact is that their dependents are totally dependent upon the income generated by each working parent at the same time." 24 Ariz.App. at ——, 535 P.2d at 637.

The language from that case clearly illustrates that in many families today there is a mutual economic dependency of one spouse upon the other. It is certainly within the power of the Legislature to recognize this fact of modern life in its definition of "dependent" within the Arizona Workmen's Compensation Act.

Had the Arizona statute remained in its previous form, it could well have been challenged on the theory that it allowed for an unconstitutional gender-based distinction. Such overbroad generalizations based on sex have been struck down in

*Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). In *Weinberger v. Wiesenfeld,* supra, the United States Supreme Court found that the provisions of 42 U.S.C. § 402(g) of the Social Security Act unjustifiably discriminated against women wage earners by affording less protection for their survivors than is provided for the survivors of male wage earners. *Frontiero v. Richardson,* supra, found the Court striking down a statute conclusively presuming military wives to be dependent upon their husbands, but requiring a servicewoman to prove that she supplied more than 50% of her husband's support before dependent's benefits would be available.

■ The final argument in the opening brief is that A.R.S. § 23–1064 works to deprive the petitioner, an insurance carrier, of property without due process of law—in derogation of both the Constitution of the United States and the Constitution of the State of Arizona. The essence of the constitutional challenge is that the statute declares a "conclusive presumption" which makes petitioner's property (prospective compensation premiums) forfeit by its operation without any opportunity to contest the basis upon which the property has been ordered forfeited. While the petitioners cite no specific authority for this proposition, we are aware that several recent decisions of the United States Supreme Court have dealt with the conclusive presumption issue. See e. g., *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S. Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L. Ed.2d 63 (1973); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Bell v. Burson,* 402 U.S. 535, 91

wife whom he has not voluntarily abandoned at the time of the injury."

The amended version of the statute reads:

"A. The following persons are conclusively presumed to be totally dependent for support upon a deceased employee:

1. A wife upon a husband whom she has not voluntarily abandoned at the time of the injury.

2. A husband upon a wife whom he has not voluntarily abandoned at the time of the injury." As amended Laws 1973, Ch. 133, § 31.

S.Ct. 1586, 29 L.Ed.2d 90 (1971). The basic theme running through these cases is that considerations of due process uniformly required that individuals be allowed to offer evidence to rebut the specific conclusive presumptions in question.

As noted in *Stanley v. Illinois,* supra, due process of law does not, however, require a hearing in every conceivable case of government impairment of private interest. To determine what procedures due process requires, it is necessary to evaluate the precise nature of the government function involved, as well as the nature of the private interest. *Stanley,* supra. The private interest allegedly violated here—the insurance company's property rights—simply does not equal the intensity of the basic civil rights violated in *Stanley,* supra. Similarly the rights protected in *LaFleur, Vlandis* and *Bell,* supra, are all distinguishable from the rights under consideration here.

While permanent irrebuttable presumptions have long been disfavored under the due process clause of the Fifth and Fourteenth Amendments, *Vlandis,* supra, it cannot be said that all irrebuttable presumptions are invalid and unconstitutional. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the United States Supreme Court upheld the provision of the Social Security Act which precludes a wage earner's widow and stepchild from recovering insurance benefits if their relation with the wage earner commenced less than nine months prior to the wage earner's death. The Act did not permit the introduction of evidence to rebut the presumption of a sham marriage.

In holding the Social Security provision valid, the Court distinguished this decision from the line of cases holding other irrebuttable presumptions unconstitutional. Specifically the Court stated:

" . . . Unlike criminal prosecutions, or the custody proceedings at issue in *Stanley v. Illinois,* such programs do not involve affirmative government action which seriously curtails important liberties cognizable under the Constitution. There is thus no basis for our requiring individualized determinations when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce." 422 U.S. at 785, 95 S.Ct. at 2476, 45 L.Ed.2d at 550.

The irrebuttable presumption of dependency found in A.R.S. § 23–1064 clearly has a relation to a legitimate legislative goal. See *Weinberger v. Salfi* supra. It is within the province of our Legislature to recognize societal changes in providing that just as a wife was once conclusively presumed to be dependent upon her working husband, a husband can now be conclusively presumed to be dependent upon his working wife. Such a finding is clearly consistent with the basic rationale of a remedial, humanitarian statute such as the Workmen's Compensation Act.

The award of the Industrial Commission is affirmed.

WREN, and SCHROEDER, JJ., concur.