CHARLES LEVECQUE *vs.* HARVEY DUPUIS ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 4th—decided November 20th, 1934.

*George E. Beers* and *Carmine G. Cipriano,* for the appellant (plaintiff).

*Walter E. Monagan,* for the appellees (defendants).

AVERY, J.   While engaged in making repairs upon the roof of The Sacred Heart Roman Catholic Church at Waterbury, on July 31st, 1933, a ladder which the plaintiff was using broke and he fell and was injured. He made a claim for compensation against the United States Construction Company and the Church, which was heard by the commissioner for the second district, acting for the commissioner for the fifth district, and compensation was awarded the claimant against the Church.   The award was set aside, on appeal, by the Superior Court and the claimant has appealed.   The commissioner found in effect that at the time of the accident the claimant was in the employ of the Church, and that his injury arose out of and in the course of that employment.   The respondent contends that at the time claimant was injured, he was an employee of the Construction Company, and entitled to compensation from it.   The Superior Court on appeal added certain paragraphs to the finding and struck out

certain others, the ultimate effect of which was to find that the claimant, at the time of the accident, was not in the employ of the Church but of the Construction Company. The first question upon this appeal, therefore, is whether the Superior Court, in view of the evidence and facts found, was justified in overruling the finding of the commissioner that the claimant's injuries arose out of and in the course of his employment for the Church. A second inquiry is whether the claimant, even if it be conceded that he was an employee of the Church at the time, was other than "one whose employment is of a casual nature, and who is employed otherwise than for the purposes of the employer's trade or business" within the meaning of General Statutes, § 5223.

It appears from the finding that the rector of the Church was the person in active charge of its real estate. In that capacity, he entered into a verbal contract with the United States Construction Company, a partnership consisting of Harvey and Leo Dupuis, whereby the company was to make certain repairs on the steeple and roof, which were to consist of putting the steeple in such condition that "it would be good for between fifteen and twenty years," and of replacing the missing slates on the roof, for which the Church was to pay the sum of $500. On July 21st, 1933, when the work was partly done, the superintendent of the company approached the rector and asked for a partial payment of the contract price for the purpose of meeting his payroll; and the rector paid him $250. On July 26th, a member of the construction firm asked the rector for the remaining $250, saying that the job would be finished by one o'clock on that day, and he wished to depart to see about another piece of work. The rector had noticed that certain slates were missing on the roof, and that three

faces of the steeple had not been properly repaired; and later in the day he had a conversation with the claimant, the foreman on the job, calling his attention to the unfinished work and told him that if he would see to it that the work was properly completed, he would pay him for it and "treat him right." Thereafter, the rector gave the claimant a check for $20 for himself and the men who were to help him, which payment was in the nature of a tip. On July 27th, the Construction Company took down its scaffolding and departed, leaving the work not properly completed. The following Monday, in accordance with his agreement with the rector, the claimant came back to the job with another man to finish the work. The rector procured a ladder for them and left them to go on with the work. While the claimant was standing on the ladder attempting to reach another to his helper on the roof, the ladder upon which he was standing broke, whereby he was forced to jump and received injuries.

In the last analysis, it depends upon the intention of the parties at the time, whether the negotiations between the rector and the claimant had the effect of a new arrangement to complete the work abandoned by the contractor, or were merely requests addressed to the claimant as an employee of the contractor to see that the latter properly completed the work. A careful examination of the evidence certified shows that there was testimony from which it could have been reasonably inferred by the commissioner that the rector, when he spoke to the claimant about the matter, had reason to believe that the contractor did not intend to do more upon the job, and that the claimant was employed to finish work uncompleted by the contractor. Although the $20 payment made for this work is found to have been in the nature of a tip, it furnished a definite consideration for which the service

was performed and thus distinguishes the instant case from one where, as in *Gibbs* v. *Downs,* 94 Conn. 487, 490, 109 Atl. 170, "occasional services are rendered in the hope of receiving compensation, and accepted with the intention of making compensation; but where no basis of contract can be found because the parties have preferred to deal with each other on a social rather than a business footing, and to treat both service and reward as voluntarily given." Our conclusion is that, although there was dispute in the evidence, there was testimony upon which the facts found by the commissioner could fairly and logically be based. Under such circumstances, his finding is not subject to correction. *Mitaly* v. *Crofut & Knapp,* 118 Conn. 672, 676, 174 Atl. 71; *Tippman* v. *State,* 119 Conn. 1, 4, 174 Atl. 296; *Stier* v. *Derby,* 119 Conn. 44, 51, 174 Atl. 332.

The second point of inquiry—whether the claimant while repairing the roof of the Church was employed for the purposes of the employer's trade or business within the meaning of General Statutes, § 5223—presents a question of considerable difficulty. We have had two cases directly involving the construction of this statute. In *Pallanck* v. *Donovan,* 105 Conn. 591, 594, 136 Atl. 471, the plaintiff was injured while employed at housework in the home of the employer whose business was conducting a meat market. It was there held that the work being done by the plaintiff was not "for the purposes of that business." In *Carlson* v. *Miller,* 118 Conn. 367, 371, 172 Atl. 872, the defendant was in the business of selling meats and vegetables, and engaged the plaintiff to erect a stand upon which to display the goods. The plaintiff was injured by the employer's saw while using it in cutting lumber for the stand, and we held that he was injured

while employed "for the purposes of the employer's trade or business" within the meaning of the statute.

General Statutes, § 5230, relates to the liability of a principal to the employee of a contractor employed by the principal. Illustrative cases involving the construction of that statute are *Bello* v. *Notkins,* 101 Conn. 34, 38, 124 Atl. 831; *Crane* v. *Peach Brothers,* 106 Conn. 110, 113, 137 Atl. 15; *Fox* v. *Fafnir Bearing Co.,* 107 Conn. 189, 194, 139 Atl. 778; *Pascoal* v. *Mortenson,* 109 Conn. 39, 43, 145 Atl. 149; *Bogoratt v. Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 136, 157 Atl. 860; *Massolini* v. *Driscoll,* 114 Conn. 546, 552, 159 Atl. 480. General Statutes, § 5223, determines who are the principal's own employees. As we pointed out in *Carlson* v. *Miller, supra,* the difference in language in the two sections is significant. Work not "a part or process" of the employer's business within the meaning of § 5230 may nevertheless be strictly "for the purposes of the business" within the meaning of § 5223. We conclude that by this difference in language, the legislature intended to give to a principal's own employees a broader claim upon him than was felt the employees of a contractor should have. In the instant case, the commissioner has found the additional fact, not attacked in any way by the appellant, that the Sacred Heart Roman Catholic Church is an independent corporation and exists for the purpose of conducting religious services and saving souls and, incidentally, to maintain the structures and real estate which it owns and uses in connection with these religious services in a suitable condition. In view of this finding of the commissioner that it was part of the business of the corporation to maintain its real estate in suitable condition, we think it must be held that while engaged in replacing a damaged slate upon the roof and effecting repairs to the steeple of the

Church, the claimant was employed "for the purposes of the employer's trade or business" within the meaning of General Statutes, § 5223.

There is error; the cause is remanded to the Superior Court with directions to dismiss the appeal.

In this opinion the other judges concurred, except HAINES, J., who dissented.