636 P.2d 1264

**GREENWAY BAPTIST CHURCH, Petitioner Employer,**

**Aetna Casualty & Surety Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Charles H. Zacher, Respondent Employee,**

**Paul R. Peterson Construction, Inc., Respondent Employer,**

**United States Fidelity and Guaranty Company, Respondent Carrier.**

**No. 1 CA–IC 2464.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 10, 1981.

Jones, Teilborg, Sanders, Haga & Parks, P.C. by Gregory L. Folger, Phoenix, for petitioners employer and carrier.

Calvin Harris, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Gallagher & Kennedy by Phillip E. Broadbent, Phoenix, for respondents employer and carrier.

Taylor & Kamper by Richard E. Taylor, Phoenix, for respondent employee.

## OPINION

FROEB, Presiding Judge.

In this review, petitioner Greenway Baptist Church and its carrier, Aetna Casualty & Surety Company, contest an award of the Industrial Commission which held that the church was the employer of respondent Charles H. Zacher (referred to as claimant) and that Aetna Casualty & Surety Company was liable for workmen's compensation because of an injury sustained by him.

In 1979, Greenway Baptist Church decided to build a new sanctuary. Limited by lack of funds, the church undertook, as it were, to act as the general contractor and retained the services of Paul R. Peterson Construction, Inc. Accordingly, a contract was entered into between the church and Peterson Construction which stated that Peterson Construction was to act as construction manager and agent of the church. For this management service, Peterson Construction was to be paid a flat fee; the church was responsible for the payment of all expenses, including labor.

Claimant was one of several workers who were paid by the church on an hourly wage basis. All, except claimant, were paid full gross wages without any deductions or withholdings. Claimant was injured on the job before his first paycheck and thereafter he received a payroll check showing all the routine deductions. A premium for workmen's compensation coverage based upon his wages was paid to the petitioner carrier.

After claimant was injured he filed claims against the church and Peterson Construction, both of which were denied. Requests for hearing were filed by claimant and both claims were consolidated. At the hearing the issue was whether claimant was an independent contractor and, if not, whether he worked for Greenway Baptist Church or Peterson Construction. The administrative law judge held that claimant was not an independent contractor but was employed by Greenway Baptist Church and awarded him workmen's compensation ben-

efits. In addition, the administrative law judge ordered that claimant "take nothing" from Peterson Construction. A request for review of the award was denied and the petitioners brought this Special Action—Industrial Commission.

The issues presented before this court are basically three: (1) whether Greenway Baptist Church was an "employer" within the provisions of Arizona's workmen's compensation law; (2) whether the record supports the hearing judge's conclusion that claimant was an employee of Greenway Baptist Church; and (3) whether the hearing judge committed a procedural error which prejudiced the petitioners. We hold the evidence does not support the award and therefore set it aside.

The first issue for discussion is whether the church is an employer subject to the workmen's compensation law. A.R.S. § 23–902(A) states in part:

Employers subject to the provisions of this chapter are ... every person who has in his employ any workmen or operatives regularly employed in the same business .... For the purposes of this section "regularly employed" includes all employments, whether continuous throughout the year, or for only a portion of the year, *in the usual trade, business, profession or occupation of an employer.* (emphasis added)

Further, A.R.S. § 23–901(5)(b) states that, for purposes of workmen's compensation law, an "employee" does not include a person whose employment is both "casual" and "not in the usual course of trade, business or occupation of the employer." The key question here is whether building a new sanctuary can be deemed the usual business of the church. There is no contention that the employment of either claimant or Peterson Construction was "casual."

Initially, we would note that a church can be a business inasmuch as there is no requirement in Arizona that a trade, business, or occupation under the workmen's compensation statute be a profit-seeking venture. *Scott v. Rhyan,* 78 Ariz. 80, 275 P.2d 891 (1954). As the supreme court stated, "[A]n employer does not cease to be such simply because no financial profit was expected." *Id.* at 84, 275 P.2d at 894.

Since the church is therefore in "business" within the meaning of A.R.S. § 23–901(5)(b), the holdings of *Lewis v. Industrial Commission,* 93 Ariz. 324, 380 P.2d 782 (1963), and *Stephens v. Industrial Commission,* 26 Ariz.App. 192, 547 P.2d 44 (1976), are inapplicable. In those cases, individuals acting as general contractors had undertaken construction of their own homes. In both cases the court found the individuals not to be in a trade or business, and thus, for workmen's compensation purposes, they were not deemed "employers."

The more difficult question in this case is whether constructing a new sanctuary is the "usual" trade or business of the church. Obviously the main business of a church is not the construction of buildings, but a building is important to the business of a church and in most cases is necessary to carry on its functions. The Arizona Supreme Court found this to be the test in two cases involving injuries occurring during the *repair* of business buildings. *Carnes v. Industrial Commission,* 73 Ariz. 264, 240 P.2d 536 (1952); *S. H. Kress & Co. v. Industrial Commission,* 38 Ariz. 330, 299 P. 1034 (1931). In *Carnes,* the industrial accident was caused by an explosion which occurred while the worker was welding a liquid fertilizer tank belonging to an employer whose business was the sale and distribution of liquid fertilizers. In *S. H. Kress & Co.,* the industrial accident occurred to a worker, hired by S. H. Kress & Co., to do repairs to windows in its store. In both cases the court found that the repairs were a part of the employer's business, notwithstanding the fact that welding and carpentry, respectively, were not services offered by the employers in the conduct of their businesses. For our purposes here, it is sufficient to point out that in these cases the supreme court has given the broader and not the

narrower meaning to the language of A.R.S. § 23–902(A) requiring that the employee be employed in the "usual" business of the employer.

■ With this background, we turn to whether the construction of a new church building is the "usual" business of Greenway Baptist Church so as to cause it to be an employer within the meaning of A.R.S. § 23–902(A). Here, we are referred to a decision of the Iowa Supreme Court which held, on similar facts, that construction of a new church building was a part of the usual business of the church. *Gardner v. Trustees of Main Street Methodist Episcopal Church*, 217 Iowa 1390, 250 N.W. 740 (1933)[1]. The court held:

> [T]he business of a church is not strictly confined to charitable purposes, spiritual uplift, and the saving of souls. Such, no doubt, is the ultimate object and purpose of all church associations; but it is a matter of common knowledge that, in order to attain such ends, it is also necessary to construct and maintain houses of worship in which the business of the church is carried on. Our land is dotted with churches in which such business is carried on. One of the important purposes of all church associations is the construction and maintenance of the church buildings and temples, in which the ultimate business of the church can be properly conducted. Much business enterprise on the part of a church association is necessary to accomplish this material part of its business. The Methodist Church of Ottumwa no doubt already had an edifice, which perhaps was no longer adequate for the requirements of that association; and as, or if, it became necessary for that body of worshippers to construct a new building, it became necessary to engage in that part of their material business requiring the construction and maintenance of another place of worship.

*Id.* at 1402, 250 N.W. at 745. For similar holdings, *see Farnham v. Linden Hills Congregational Church*, 276 Minn. 84, 149 N.W.2d 689 (1967); *Schreckengost v. Gospel Tabernacle*, 188 Pa.Super. 652, 149 A.2d 542 (1959); *Levecque v. Dupuis*, 119 Conn. 224, 175 A. 782 (1934). In view of the fact that the Workmen's Compensation Act is remedial in nature and should be liberally construed, *Fullen v. Industrial Commission*, 122 Ariz. 425, 595 P.2d 657 (1979), we agree with the conclusion of the hearing judge that claimant was injured while performing work for the church in the usual course of its business.

■ The next issue for discussion is whether the evidence supports the hearing judge's determination that claimant was an employee of Greenway Baptist Church. This court must view the evidence in a light most favorable to sustaining the award. *Ortega v. Industrial Commission*, 121 Ariz. 554, 592 P.2d 388 (App.1979). Further, it is the hearing judge's duty to resolve conflicting evidence and his resolution will not be disturbed unless it is unreasonable. *Id.; see Micucci v. Industrial Commission*, 108 Ariz. 194, 494 P.2d 1324 (1972).

■ The touchstone for this question is whether the church had the right to control the method by which claimant did his work. *Home Insurance Co. v. Industrial Commission*, 123 Ariz. 348, 599 P.2d 801 (1979). As pointed out in *Home*, the right of control is determined by evaluating the totality of employment circumstances with reference to various indicia of control. These indicia include: the duration of the employment; the method of payment; who furnishes the necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; and the extent to which the employer may exercise control over the details of the work. *Id.* at 350, 599 P.2d at 803. In analyzing the foregoing, none of the indicia is, in itself,

1. This case has been cited with approval by the Arizona Supreme Court in *Scott v. Rhyan*, 78 Ariz. 80, 275 P.2d 891 (1954), for the proposition that an employer need not seek financial gain to be an employer under Arizona's workmen's compensation law.

conclusive. *El Dorado Insurance Co. v. Industrial Commission,* 25 Ariz.App. 617, 545 P.2d 465 (1976).

Viewing the evidence most favorably in support of the award, *Micucci v. Industrial Commission, supra,* we nevertheless are unable to find substantial evidence in the record that claimant was under the control of the church.

The contract between the church and Peterson Construction is a construction management agreement outlining the various obligations of each of the parties. We need not discuss the details of the agreement. It stated very clearly that Peterson Construction was to provide a full time project superintendent who was directly responsible to *"and only to"* Peterson Construction, the construction manager. The construction manager was "responsible for construction and performance of the project." Even though the church could furnish labor, the labor had to be approved by the manager and "directed" by the job superintendent. The job superintendent had "full authority to accept, or reject work performed by the Owners and to dismiss workers...."

The evidence is undisputed that claimant was hired by Peterson Construction's job superintendent, Joe Kaufman, who exercised supervisory control over him. The pastor of the church, Reverend Joseph Bailey, testified that he did not feel he had the right to fire Joe Kaufman, and he gave no indication that he felt he had the right to fire claimant. While the church exercised various decisions concerning materials and furnishings, there is no indication that it ever directed claimant as to how to do his job. The record indicates that claimant furnished his own tools.

The claimant relies heavily on the undisputed fact that his wages and those of other workers were paid directly by the church out of its construction account. Although the pastor indicated this was a matter of convenience and that "probably we felt we could exercise more control that way," it is apparent from the evidence and the nature of the contract between the church and Peterson Construction that no special significance was given by either of the parties as to who paid the workers. It was pointed out that it had to come from the construction fund and that one way or the other the church would be paying the wage expenses.

The claimant also relies upon the fact that a premium for workmen's compensation insurance was paid to petitioner carrier based upon claimant's wages. Recognizing that one of the indicia for determining control can be the allocation between parties of the responsibility for workmen's compensation coverage, the evidence falls short of being probative in this case. In the first place, the written agreement between the church and Peterson Construction did not assign this responsibility and there is no indication of any oral understanding that the church was responsible for it. The payment of the premium after the accident came about when Joe Kaufman turned in claimant's time slip to the church bookkeeper with instructions. The pastor of the church did not review it since he was out of town that week. As there is no evidence that payment of the insurance premium was in any sense mutually agreed upon, its probative value on the question of whether claimant was an employee of the church is very limited.

To conclude this point, we hold that there is lacking in the present record substantial evidence that claimant was the employee of the church and not the employee of Peterson Construction. We note, however, that in this review, there is no serious contention that claimant was an independent contractor. He therefore worked as an employee for either the church or Peterson Construction or for both. There is, however, no present contention that claimant worked as an employee for *both* employers. Upon a finding that the evidence does not support an award, this court can only set it aside. We therefore do not rule that claimant was an em-

ployee of Peterson Construction. Instead, we remand the case to the Industrial Commission, where both sides are free to present further evidence. This takes on special significance in this case because it appears neither party has urged before the Commission the potential effect of A.R.S. § 23–902(B) which reads as follows:

> When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

Under this section providing for what are known as "statutory employees," if the church retained supervision or control over the work of *Peterson Construction*, then an employee of Peterson Construction was, within the meaning of A.R.S. § 23–902(B), a "statutory employee" of the church wholly apart from the question of whether he was a direct employee of the church itself. If the Commission should find that A.R.S. § 23–902(B) applies in this way, then the claimant would be an employee of both the church and Peterson Construction. *See generally, Hamrick v. Industrial Commission*, 15 Ariz.App. 277, 488 P.2d 482 (1971); *Basurto v. Utah Construction & Mining Co.*, 15 Ariz.App. 35, 485 P.2d 859 (1971).

The remaining issue relating to the claimed procedural error does not require discussion in light of our decision because it is unlikely to recur on remand.

The award of the Industrial Commission is set aside.

WREN, C. J., Division 1, and EUBANK, J., concur.