665 P.2d 40

David T. YOUNG, a single man; and Michael W. Mason, a single man, Plaintiffs/Appellees/Cross Appellants,

and

Kirby Building Systems, Inc., a Texas corporation, Defendant/Appellee,

v.

ENVIRONMENTAL AIR PRODUCTS, INC., an Arizona corporation, Defendant/Appellant/Cross Appellee.

David T. YOUNG, a single man; and Michael W. Mason, a single man, Plaintiffs/Appellants,

v.

ENVIRONMENTAL AIR PRODUCTS, INC., an Arizona corporation; Kirby Building Systems, Inc., a Texas corporation; William Foster and Betty Foster, husband and wife; Frank Coates and Gloria Coates, husband and wife; and Tonnes Skagestad and Esther Skagestad, husband and wife, Defendants/Appellees.

KIRBY BUILDING SYSTEMS, INC., a Texas corporation, Defendant/Cross Appellant,

v.

ENVIRONMENTAL AIR PRODUCTS, INC., an Arizona corporation, Defendant/Cross Appellee.

William S. FOSTER and Betty Foster, husband and wife, Cross Plaintiffs/Appellants,

v.

ENVIRONMENTAL AIR PRODUCTS, INC., an Arizona corporation, Cross Defendant/Appellee.

No. 16216–PR.

Supreme Court of Arizona, En Banc.

April 1, 1983.

Rehearing Denied June 14, 1983.

**160**

Healy & Beal by William T. Healy, Robert L. Beal, Tucson, for Young and Mason.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Richard J. Woods, Larry L. Smith, Phoenix, for Kirby Building Systems.

Slutes, Browning, Sakrison & Grant by William D. Browning, Tucson, for Environmental Air Products and Coates.

Walter U. Weber, Tucson, for Foster.

Thomas E. Johnson, Tucson, for Skagestad.

FELDMAN, Justice.

Plaintiffs Mason and Young claim they were injured while working for Cimetta Construction Company (Cimetta), a contractor engaged in erection of a new building for Environmental Air Products (EAP). Plaintiffs brought a tort action against EAP and others. In defense, EAP argued that it was plaintiffs' employer by operation of law (a "statutory employer" [1] under A.R.S. § 23–902(B)), and was, therefore, entitled to the benefit of A.R.S. §§ 23–906 and 23–1022, which provide that absent rejection of compensation coverage before injury, workmen's compensation is an injured employee's exclusive remedy against an employer who has complied with the Workmen's Compensation Act.

The court of appeals held that EAP was not plaintiffs' statutory employer because plaintiffs had not consented to such a relationship. We accepted review of this case and of the companion case, *Word v. Motorola, Inc.*, Ariz., 662 P.2d 1024 (1982), in order to reconcile any conflict between our two appellate divisions and to settle Arizona law on issues pertaining to employers' immunity to remote employees' common law tort actions. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and Ariz.R.Civ. App.P. 23, 17A A.R.S.

EAP wished to erect a large building to use for part of its manufacturing operations. It contracted with defendant Kirby Building Systems, Inc. (Kirby), a manufacturer of prefabricated metal buildings, for the purchase of a "kit" which contained all of the parts needed for the prefabricated structure. EAP undertook to erect the building itself and used its maintenance chief, William Foster, as supervisor of the construction project. Foster had been hired by EAP some time prior to the incidents in question as a maintenance chief or foreman, and was evidently assigned to the construction work because of his prior experience in erection of small prefabricated buildings. EAP hired a crew to work on the construction project, with Foster acting as construction foreman. EAP's main business was the manufacture of sheet metal products and various accessories, such as registers for duct work, used in the air conditioning industry. So far as the record shows, it had never before undertaken construction of a building.

During the course of construction, the Registrar of Contractors of the State of Arizona received a complaint about EAP doing its own construction work without a contractor's license. A representative of the registrar's office spoke to Mr. Coates, EAP's chief operating officer in Tucson, and informed him that that construction must cease and could not resume until EAP had entered into an agreement for construction with a licensed contractor.[2] Coates called the registrar's office that afternoon and informed them that EAP had contracted with Cimetta and that Cimetta would finish construction on the building. He also told the registrar's office that EAP was now in compliance with the law and that none of its employees would be working on the job.

Indeed, EAP and Cimetta entered into a contract that very day. The contract provided that Cimetta was to finish the construction of the project, supervise construction activities, employ the persons necessary

---

**1.** As used in this opinion, the term "statutory employer" refers to one compelled by law to pay workmen's compensation benefits to remote employees—i.e., employees of another.

**2.** *See* A.R.S. § 32–1121(5) (prior to 1981 amendment).

for those purposes and carry workmen's compensation insurance for them. Cimetta was required to accept Foster as foreman for the project.[3] There was testimony that the contract was a sham designed to allow the project to continue, ostensibly under Cimetta's aegis, but actually in much the same way as before the visit from the registrar's office. However, there was also evidence that Cimetta did exercise control over Foster and that it actually had the right to hire and fire the other workers. Plaintiff Mason had been hired by Foster and worked for EAP before the Cimetta-EAP contract. On the day that contract was signed, Mason went off the EAP payroll and was placed on Cimetta's payroll. Young was hired two days later to work for Cimetta and was put directly on Cimetta's payroll.

Plaintiffs were injured when the building collapsed because of improper bracing. Both plaintiffs collected compensation benefits from Cimetta's compensation carrier and sued EAP in tort—a so-called "third party action"—under A.R.S. § 23–1023. This statute allows any employee entitled to compensation to bring a tort action for damages against a tortfeasor "not in the same employ" and further provides that the compensation carrier shall have ·a lien against any recovery to the extent of the benefits paid by that carrier.

In bringing their action, plaintiffs claimed that EAP and Foster were negligent in the erection of the building. Plaintiffs also joined Kirby, Coates, Cimetta and its officer, Skagestad, as defendants. The trial court directed a verdict in favor of Cimetta, Skagestad and Coates. The jury returned a verdict against Kirby, Foster and EAP as Foster's employer. The trial court granted judgment n.o.v. to Kirby. EAP appealed and raised several allegations of error, including the claim that the trial court should have found that plaintiffs were EAP employees. We agree with the

court of appeals and approve its opinion with respect to disposition of all issues except those dealing with the statutory employer question. The issue before us, therefore, is simply whether EAP was plaintiffs' statutory employer. If so, it is entitled to the immunity conferred upon employers by the exclusivity statutes (A.R.S. §§ 23–906 and 23–1022;[4] if not, then EAP was a "third party" subject to the employees' common law damage action under A.R.S. § 23–1023.

■ The statutory employer situation is a legislatively created scheme by which conceded non-employees are deliberately brought within the coverage of the Act. The statute which accomplishes this is A.R.S. § 23–902(B); it provides that:

> When an employer procures work to be done for him by a contractor over whose work he [1] *retains supervision or control,* and [2] such work is a *part or process in the trade or business* of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

(Emphasis supplied.) Thus, the original employer is required to provide workmen's compensation for its remote employees, just as is required of direct employers. *See* A.R.S. § 23–902(A); *see also and compare United States Fidelity & Guaranty Co. v. Industrial Commission,* 42 Ariz. 422, 435, 26 P.2d 1012, 1017 (1933) (holding the remote employer primarily liable for compensation benefits even though the direct employer provided coverage); *and Basurto v. Utah Construction & Mining Company,* 15 Ariz. App. 35, 41, 485 P.2d 859, 865 (1971) (stating that the remote employer is secondarily liable for workmen's compensation if the direct employer fails to provide coverage).

---

**3.** Foster was a former Cimetta employee; he had suggested Cimetta's name to Coates and had been assigned by Coates to negotiate the contract between EAP and Cimetta.

**4.** Plaintiffs seem to concede that immunity result if EAP is a statutory employer. However, see notes 5 and 6, *infra.*

The rationale of statutory employer immunity[5] is that since the remote employer shoulders the burdens imposed by the Act, he should enjoy the immunity which that Act grants a direct employer. 2A A. Larson, *Workmen's Compensation Law* § 72.-31(a) (1982). Larson states the law as follows:

> Since the general contractor is ... in effect, made the employer for the purpose of the compensation statute, it is obvious that he should enjoy the regular immunity of an employer from third-party suit when the facts are such that he could be made liable for compensation; and the great majority of cases have so held.

*Id.* at 14–112.[6]

EAP argues that as a matter of law plaintiffs were its statutory employees under A.R.S. § 23–902(B). The court of appeals held that the two statutory requirements for finding statutory employer status under § 23–902(B) were met in this case, but imposed a third requirement—consent. The court recognized that the test for establishing an employer-employee relationship is to be liberally applied in order to bring employees within the protection of workmen's compensation, but held that where it is the employer who seeks to invoke the statute in order to insulate itself from tort liability, the court ought not to strain to find the existence of an employment relationship. Basing its decision on *Novenson v. Spokane Culvert and Fabricating Co.*, 91 Wash.2d 550, 588 P.2d 1174 (1979), and holding that the statutory employer relationship could not be invoked absent the consent of the employee, the court of appeals concluded that an employee-employer relationship between plaintiffs and EAP, and the plaintiffs' consequent loss of common law rights, could not be recognized. We disagree with the court of appeals and

hold that the *Novenson* doctrine is not applicable to the situation presented by the case at bench.

*Novenson* is a case involving lent employees, where the employee of an agency engaged in providing temporary help to its customers was injured while working for a customer of the agency. The employee received benefits from the workmen's compensation coverage provided by the employment agency and brought a third party action against the customer. The Washington court held that the customer was not entitled to claim statutory employer status and consequent immunity from tort liability absent a showing that the worker had consented to the employment relationship. The consent requirement is the correct rule with respect to a lent employee situation.[7] 1C Larson, *supra* § 48.00. As Larson points out, however, lent employee cases have a "special character" because:

> [T]hey begin, not with an unknown relation, but with an existing employment relation .... There is here no place for presumptions based on the beneficient purposes of the act. The only presumption is the continuance of the general employment, which is taken for granted as the beginning point of any lent-employee problem. To overcome this presumption, it is not unreasonable to insist upon a clear demonstration that a new temporary employer has been substituted for the old, which demonstration should include a showing that a contract was made between the special employer and the employee, ....

*Id.* at 8–327 to –328.

Plaintiffs here, however, were not hired by Cimetta and then lent to EAP to do its work, as in *Novenson* and *Word*. In this case, the plaintiffs were the employees of a

---

**5.** Plaintiffs do not raise and we need not and do not reach the question of whether one who is an "employer" only by operation of and "within the meaning of" A.R.S. § 23–902(B) is entitled to the immunity conferred on "employers" under §§ 23–906 and 23–1022.

**6.** Larson acknowledges that there is a split of authority on the question of statutory employer

immunity when the alleged statutory employer is not subject to liability for benefits because the direct employer carries insurance. Larson, *supra* § 72.31(b). This issue was not raised by the parties and we do not reach it.

**7.** The facts of *Novenson, supra*, are analogous to those of *Word v. Motorola, supra.*

contractor engaged to perform a specific job—the construction of a building. Under these facts, the consent required of lent employees is not applicable. If the court of appeals decision was based solely on *Novenson,* its foundation was unsound. Furthermore, we do not believe the requirement of consent should be extended to statutory employer cases and note that the authorities have rejected the imposition of a consent requirement in such situations. The theory that consent is relevant to the statutory employer issue seems to come from *Laffoon v. Bell & Zoller Coal Co.,* 27 Ill. App.3d 472, 327 N.E.2d 147 (1975), *rev'd,* 65 Ill.2d 437, 3 Ill.Dec. 715, 359 N.E.2d 125 (1977). The dissent at the appellate court level, which was partially adopted by the Illinois Supreme Court, erroneously cited Larson—as did our court of appeals in the case at bench—in holding that the claimant cannot be found to have waived his common law rights against a statutory employer when he has not consented to the relationship. Actually, Larson rejects this argument; we quote with approval:

> The dissent here confuses two quite different branches of law—that of statutory employees and that of lent employees. It is clear that the statutory employee type of immunity does not apply if the true relationship is that of lent employee. The [argument in Larson's treatise] relied on by the dissent [in *Laffoon*] is appropriate in lent employee situations, since there it is the two employers themselves who are purporting by their private arrangements to affect the common law rights of the employee without his knowledge and consent. But this is not true of the statutory employment relationship. Here the state has, for various policy reasons, decreed by statute that certain legal liabilities and relations shall follow if the parties fit into a particular employment pattern. The two employers do not, between them, attempt to determine the employee's status or rights. That status and those rights follow automatically when the facts show an uninsured subcontractor doing certain kinds of work for the contractor. The state has con-

cluded that the employee's interests are best served by granting him compensation from the contractor, and if the normal immunity from damage suits that attends such liability were applied, [it] would merely be the incidental result of an overall [state] policy.

2A Larson, *supra* § 72.31(c), at 14–140 to –141 (emphasis supplied).

▮ We recognize that when the statutory employer concept is used as a device to immunize a remote employer, the objective of the Workmen's Compensation Act is not advanced, since "the purpose of the Act is to protect the employee rather than the employer." *United States Fidelity and Guaranty Co. v. Industrial Commission,* 42 Ariz. at 430, 26 P.2d at 1015. We agree with the court of appeals that the legislative objectives are furthered if the statute is liberally interpreted when imposing liability for payment of compensation benefits, *United States Fidelity and Guaranty Co., supra,* and strictly interpreted when loss of the worker's common law rights is the object for which the statute is invoked, *Basurto,* 15 Ariz.App. at 42, 485 P.2d at 866. Nevertheless, we believe that the consent theory espoused by the dissent in *Laffoon,* advanced by plaintiffs here, and adopted in the opinion of the court of appeals is not relevant to the statutory employer issue. The application of the statutory employer theory is the result of legislative enactment. Consent is not required by the statute and this court cannot impose such a requirement where the legislature has failed to do so.

▮ Our holding that consent is not required to establish a statutory employer relationship does not end our inquiry. Not every contractor-subcontractor situation falls within the statutory employer concept. Two elements must exist in order to invoke the provisions of A.R.S. § 23–902(B). The first is that the employer against whom the tort action is brought must retain "supervision or control" over the work which he procures to be done by a contractor. The evidence in this case satisfies this requirement, since Foster supervised the construction which was being done by Cimetta, and

by special interrogatory the jury found Foster remained an employee of EAP.

The second element necessary to invoke the defense of exclusivity based upon the statutory employer doctrine is that the work which was entrusted to the subcontractor must be a *"part or process in the trade or business"* of the employer against whom the third party tort action is asserted. Relying on the holding of *Greenway Baptist Church v. Industrial Commission,* 130 Ariz. 482, 636 P.2d 1264 (App.1981), the court of appeals concluded that Cimetta's construction work was "part or process" of EAP's trade or business. We do not agree.[8] The test announced in *Greenway* dealt with covered employer status under A.R.S. § 23–902(A) rather than statutory employer status under § 23–902(B). These sections promote different interests and are therefore governed by different standards. In addressing these differences, Larson states:

> It should not be assumed, ... that rules and precedents can be freely imported from one of these areas into another.... [A]part from the fact that there will usually be found significant differences in the statutory phrase interpreted, the important *caveat* is that the purposes being served by the two statutes are quite dissimilar. For one thing, the statutory-employer statute begins with a complete absence of employment relation between the person being held for compensation and the claimant, while in the [covered employer] problem the employment relation admittedly exists. The claimant here [in determining whether the employer is covered] being concededly an employee, all the purposes and objectives of compensation legislation therefore presumptively apply to him, unless some good reason can be shown for his exclusion. In other words, he starts in a much stronger position than the employee of the uninsured subcontractor. More-

over, one purpose of the statutory-employer statute is to prevent evasion of the act by parceling out the employer's own work in the form of subcontracts. Therefore, as was observed in the conclusion of the discussion of statutory employers, the general purpose of the contractor-under statute is usually deemed satisfied if it is applied to as broad an area of activities as the employer *would normally undertake through his own regular employees.* No such limiting policy consideration applies to the [covered employer] problem. The job is in fact being done by an employee—a fact which looms much larger than any speculation about how the employer might usually be expected to get it done.

1C Larson, *supra* § 51.22, at 14–140 to –141 (emphasis supplied).

■ Thus, the test contained in A.R.S. § 23–902(A) to determine whether an employer is covered by workmen's compensation turns on the question of whether the activity in which it is engaged is part of the "usual trade, business, profession or occupation of an employer." This test focuses on the broad question of whether the activity is a necessary and expected part of the employer's business, even though rarely performed. In *Greenway,* therefore, the court correctly held that a church acting as its own general contractor, employing a construction supervisor to supervise the work, was a covered employer under § 23–902(A).

■ In contrast, the test for statutory employer turns on the question of whether the work in question is "part or process in the trade or business of the [remote] employer." A.R.S. § 23–902(B). This test focuses on[9] the more narrow issue of whether the activity is regular, ordinary or routine in the operation of the remote employer's business. Larson makes the following com-

---

**8.** The court of appeals stated that plaintiffs "did not object" to this conclusion. Our review of the trial record reveals that plaintiffs did object. *See* Transcript of Proceedings, 1337–47; Plaintiffs' Trial Memorandum of Points and Authorities, 51–54.

**9.** To the extent that dicta in *Greenway* applies the covered employer test to the statutory employer issue, it is disapproved. *See* 130 Ariz. at 487, 636 P.2d at 1269.

ment with regard to the interpretation of statutory employer provisions:

Practically all of the cases of general interest interpreting this type of statute are addressed to one question: When is the subcontracted work part of the *regular* business of the statutory employer? The statutory language lying behind this question varies somewhat. Some acts [including Arizona's] speak of work which is "part of or process in" the employer's trade or business .... But, with a surprising degree of harmony, the cases applying these assorted phrases agree upon the general rule of thumb that the statute covers all the situations in which work is accomplished which this employer, or employers in a similar business, would *ordinarily* do through employees....

....

[T]he test must be relative, not absolute, since a job of construction or repair which would be a nonrecurring and extraordinary undertaking for a small business might well for a large plant be routine activity which it normally expects to cope with through its own employed staff. *Ordinarily construction work, such as building a factory structure,* installing a conveyor system, moving laboratory equipment, putting in new partitions, making electrical installations, road widening ... *would be considered outside the trade or business of a manufacturing or mercantile establishment.*

....

In addition to the test based on regularity or predictability of the activity, and on its relation to the way this employer got this kind of job done in the past, a helpful additional test is that which asks whether this employer is equipped normally to handle this task, both as to skilled man power and as to tools.

1C Larson, *supra* § 49.12 (emphasis supplied).

■ Turning to the case at bench, we conclude that while the construction of this building might have been a necessary and expected part of EAP's business, it was not a part of the regular, ordinary and routine operations of EAP. Nor was it shown to be something that EAP or others in its trade or business routinely did through their own employees rather than through the services of independent contractors. EAP was not "equipped to handle this task." In fact, the construction of this building was the type of work which EAP was not permitted to do without a contractor's license. It did not possess such a license, and it was for this very reason that it entered into the arrangement with Cimetta. We hold, therefore, that the uncontroverted facts of this case require a finding that the construction of the factory building for EAP was not "part or process" of EAP's trade or business; as a result, EAP was not plaintiffs' statutory employer. Therefore, EAP cannot claim the doctrine of exclusivity and is subject to plaintiffs' common law tort action.

■ One further issue must be mentioned. In its motion for rehearing in the court of appeals, EAP claims that a question of fact existed on the issue of whether plaintiffs were direct employees of Cimetta or EAP. The foundation for this is EAP's argument that its agreement with Cimetta was a "sham" created for the sole purpose of enabling EAP to continue the construction work under the guise of Cimetta's contractor's license. EAP contends that in reality Cimetta had little or nothing to do with the job and that Foster continued to handle the construction work as an employee of EAP. Thus, according to EAP, Foster's position as Cimetta's construction supervisor was only a facade. EAP acknowledges, however, that the evidence shows that plaintiffs were carried on Cimetta's payroll, that they were paid by Cimetta, that Cimetta covered them for workmen's compensation, paid employer's taxes on their wages and withheld from their pay for income tax purposes. EAP explains this as part of the ruse necessary to make it appear that Cimetta was actually doing the construction work, thereby preventing the registrar of contractors from closing the job, but argues that in reality everyone Foster

hired was an employee of EAP and not Cimetta, whether they knew it or not. Thus, according to EAP, the trial court erred in not allowing the question of plaintiffs' direct employment with EAP go to the jury. To this contention, we can only reply that if the records were successfully set up as a ruse and sham to fool the registrar of contractors, the trial court was correct in holding EAP to its bargain. This court will not allow any party to reverse its factual position to suit the needs of the moment.

As modified by this opinion, the opinion of the court of appeals is approved and the judgment below is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.