NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HARTE'S CONTRACTING SERVICES, *Petitioner Employer*,

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
*Petitioner Insurance Carrier*,

v.

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

TEODULO RAFAEL VASQUEZ, *Respondent Employer*,

SPECIAL FUND DIVISION/NO INSURANCE SECTION, *Respondent Party in Interest,*

ROBERTO ZARATE-RAMIREZ, *Respondent Employee*,

CARLOS BERNAL,* *Respondent Employee*,

DAGOBERTO ALDAMA CHAVEZ,** *Respondent Employee*,

EDGAR LOYA SOLANO,*** *Respondent Employee*,

JULIO SANCHEZ,**** *Respondent Employee*,

and

JESUS LOPEZ-CORAL,***** *Respondent Employee*.

No. 1 CA-IC 18-0013
No. 1 CA-IC 18-0014*
No. 1 CA-IC 18-0015**
No. 1 CA-IC 18-0016***
No. 1 CA-IC 18-0017****
No. 1 CA-IC 18-0018*****
   (Consolidated)

   FILED 2-7-2019

_____

Special Action - Industrial Commission

No. 20162-850173
No. 20162-850101*
No. 20170-120285*
   (Consolidated)*
No. 20162-850104**
No. 20163-540216**
   (Consolidated)**
No. 20162-850107***
No. 20162-860300****
No. 20162-850112*****
No. 20163-540218*****
   (Consolidated)*****

Carrier Claim
No. 127-CB-E1U9351-T
No. 127-CB-E1U9256-E*
No. 127-CB-E1U9352-E**
No. 127-CB-E1U9258-K***
No. 127-CB-E1U9264-E****
No. 127-CB-E1U9354-K*****


Gaetano J. Testini, Administrative Law Judge


**AWARD SET ASIDE**
_____


2

COUNSEL

Lundmark, Barberich, La Mont & Slavin, P.C., Phoenix
By R. Todd Lundmark
*Co-Counsel for Petitioner Employer*

Janet S. Weinstein, P.C., Phoenix
By Janet S. Weinstein
*Co-Counsel for Petitioner Employer*

Industrial Commission of Arizona, Phoenix
By Stacey Ann Rogan
*Counsel for Respondent*

Norton & Brozina, P.C., Phoenix
By Christopher S. Norton, Kevin E. Karges
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1        This is a statutory special action review of an Industrial Commission of Arizona ("ICA") consolidated award and decision upon review for compensable claims. Three issues are presented on review:

> (1) whether the administrative law judge ("ALJ") erroneously concluded that the petitioner employer, Harte's Contracting Services ("Harte's"), was the statutory employer of Teodulo Rafael Vasquez's ("Rafael's") injured workers;
>
> (2) whether the ALJ erroneously found that Harte's retained the right to exercise control over Rafael's work; and

3

(3) whether the ALJ erroneously found that framing work is a "part or process in the trade or business" of Harte's general contracting business.

Because we find that the ALJ committed legal error by finding that Harte's was a special employer, we set aside the award.

## I. JURISDICTION AND STANDARD OF REVIEW

**¶2** This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2) (2016), 23-951(A) (2012), and Arizona Rule of Procedure for Special Actions 10 (2014). We consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105 (App. 2002). In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, *Young v. Indus. Comm'n*, 204 Ariz. 267, 270 (App. 2003), but review the ALJ's ruling concerning a claimant's employment status de novo as an issue of law. *Vance Int'l v. Indus. Comm'n*, 191 Ariz. 98, 100 (App. 1998).

## II. PROCEDURAL AND FACTUAL HISTORY

**¶3** On July 14, 2016, Harte's, a general contractor, entered a building contract with Heart Cry Church ("HCC") for a new church. Due to unique circumstances, the construction contract contained several unusual provisions. The church pastor owned a concrete business, so the church provided its own concrete work for the new building. The church also purchased the lumber and trusses for the building to avoid paying a markup on materials to the framing contractor. Lastly, Justin Harte, the president of Harte's, was a member of HCC and agreed to build the church for cost.

**¶4** Justin, on behalf of Harte's, performed the regular work of a general contractor. He hired subcontractors, scheduled their work, and performed safety and quality control. Harte's hired approximately twenty subcontractors to build the church, and these included mechanical, plumbing, roofing, fire, electrical, HVAC, framing, and flooring. For the framing work, Harte's hired Rafael's company, Vasquez Construction, and the parties signed a standard subcontractor agreement. This subcontract was for labor only since the church provided the lumber and trusses.

**¶5** Rafael's crew began framing on September 16, 2016, and anticipated that the work would take four to six weeks. By October 3, 2016,

the building walls were up, and the framing crew began putting on roof trusses. That same day, a truss collapsed, and six crew members fell to the ground sustaining non-life-threatening injuries. Prior to the accident, there was no indication of any problem with the framing or materials. Justin performed daily walk throughs, and the City of Queen Creek performed "professional inspections."

¶6         After the October 3, 2016 accident, Harte's first became aware that Rafael was unlicensed and uninsured. Harte's business practice was to check the licensing and insurance for each of its subcontractors. In Rafael's case, this did not occur due to a family emergency for the administrative assistant at Harte's responsible for checking credentials when a subcontract was signed. All other HCC project subcontractors were licensed and insured.

¶7         On the date of the accident, Harte's also became aware that Rafael owed his framing crew wages. Together, Harte's and HCC provided the injured workers with food and wages. They also asked the workers to sign a release of liability in exchange for their assistance and at least three did.

¶8         All six injured workers filed workers' compensation claims against Harte's, Rafael, or both. All claims were denied for benefits, and all denials were timely protested.

¶9         The ALJ held one consolidated hearing for testimony from HCC's pastor, William L. VanCamp, Jr.; Harte's administrative assistant, Lori Sigrist; Justin Harte; Justin's friend, Diego Rascon; and the six injured workers: Roberto Zarate-Ramirez, Carlos Bernal Ramos, Dagoberto Aldama Chavez, Edgar Loya-Solano, Julio Sanchez, and Jesus Lopez-Corales. After the accident, Rafael disappeared, and he did not participate in the ICA proceedings.

¶10         After the parties filed post-hearing memoranda, the ALJ entered an award for compensable claims. He found that Rafael was the injured claimants' direct employer, and that Harte's was the injured claimants' statutory, or special, employer. Regarding Harte's, the ALJ found:

> Harte's Contracting Services entered into a contract with Teodulo Rafael Vasquez for framing work on the project. Per the testimony of Mr. Harte, part of the contract… precluded

5

Mr. Vasquez from hiring subcontractors to complete the work. Mr. Harte intervened between Mr. Vasquez and his employees to resolve a compensation dispute. While Mr. Harte testified that he did not necessarily exercise control over the framers and Mr. Vasquez, *I find there is sufficient evidence that Mr. Harte had the right to exercise control over the work of Mr. Vasquez. I also find the framing work is a part or process in the trade or business of Harte's Contracting Services*.

Harte's requested administrative review, and the ALJ supplemented and affirmed the award. Harte's next brought this appeal.

## III. DISCUSSION

**¶11** Harte's first argues that the ALJ committed legal error when he concluded that Harte's was the claimants' statutory employer. To be a statutory employer, the courts have found that two conditions must be met: (1) the employer procuring the work to be done for him by a subcontractor must retain supervision or control over the work; and (2) the work entrusted to the subcontractor must be a part or process in the employer's regular trade or business. *Hunt Bldg. Corp. v. Indus. Comm'n*, 148 Ariz. 102, 105 (1986)*;* A.R.S. § 23-902(B). The focus of the statutory employer analysis is on the relationship between the party employing the injured worker and the party that contracted with the injured worker's employer. *See Blasdell v. Indus. Comm'n*, 65 Ariz. 373, 376 (1947).

**¶12** In determining whether the first condition of the statutory employer relationship exists, courts have applied the traditional right to control test that is used to determine whether an individual is an employee or an independent contractor. *Hunt,* 148 Ariz. at 106. This test examines the totality of the circumstances of the work and the various indicia of control between the parties. *See Reed v. Indus. Comm'n*, 23 Ariz. App. 591, 593 (1975). These include "the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workman's compensation insurance; the extent to which the employer may exercise control over the details of the work; and whether the work was performed in the usual and regular course of the employer's business." *Home Ins. Co. v. Indus. Comm'n*, 123 Ariz. 348, 350 (1979).

**¶13** In this case, we apply the "right to control" test to the relationship between Harte's and Rafael to determine whether Harte's had the right to exercise control over Rafael's work. Pursuant to the framing subcontract between Harte's and Rafael, the duration of the framing work

was finite, and it was for an agreed upon lump sum without any withholding. HCC provided the raw materials for the framing work. Harte's provided large equipment such as a generator and an office trailer for all subcontractors at the site. Harte's subcontract with Rafael provided:

**SECTION 121 SPECIAL PROVISIONS** (Including unit pricing if applicable) Dumpster, Forklift, Crane for trusses and materials will be provided by the Contractor. Other tools necessary to completion of the contract are the sole responsibility of the Subcontractor.Rafael's crew provided their own safety equipment and hand tools.

**¶14** Regarding the right to hire and fire, Harte's hired Rafael for the framing work and it fired him after the truss collapse. The subcontractor agreement did not explicitly discuss the responsibility for providing workers' compensation insurance, but Ms. Sigrist testified that all of Harte's subcontractors were required to have workers' compensation insurance.

**¶15** Arizona courts recognize that in the context of construction contracts, the general contractor necessarily retains the right to exercise general supervision over the entire building project including scheduling the sequence of the work, ensuring safety of the job site and obtaining a satisfactory end result. *Pruett v. Precision Plumbing*, 27 Ariz. App. 288, 291 (1976) (a general contractor's "right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations . . . or to prescribe alterations and deviations" does not constitute control over the subcontractor's work); *see also Chesin Const. Co. v. Epstein*, 8 Ariz. App. 312, 315 (1968) (provisions in construction contracts reserving the right to the general contractor to direct, order, instruct, or supervise a subcontractor is not the type of control that negates a subcontractor's status as an independent contractor).

**¶16** In their workers' compensation treatise, Professors Larson note that realities of the modern workplace have resulted in employers subcontracting out portions of their businesses, causing the control test to also take into consideration a relative-nature-of-the-work-test. *See* 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 62.01 at 62-2 to -4 (2018). For example, "realistically . . . plasterers, painters, [and] electricians . . . almost invariably, by the inherent nature of their crafts, must and do work with . . . [some] degree of independence." *Id*. § 62.06[1][b] at 62-24 to -25.

¶17    In this case, Justin testified that he was not a framer, could not perform framing work, and Harte's did not have employees to do framing. For that reason, he stated that his control over Rafael's work was limited to ensuring the work was "up to code," the job site was safe, and the work progressed in a timely manner.  Justin's testimony was consistent with that of the injured workers testimony, i.e., Rafael was the framers' boss, Justin was Rafael's boss, Justin did not tell the framers what to do, Justin walked the job site, and Justin stayed in the office trailer.  After examining the *Home Insurance Company* indicia of control and considering the evidence in the appellate record, that evidence does not demonstrate that Harte's retained any more control over Rafael's work than was necessary to keep the work moving safely forward and to obtain a satisfactory end result for HCC.

¶18    The second element of the statutory employer test is whether framing work is a part or process in Harte's regular trade or business. The Arizona Supreme Court discussed this element in *Young v. Environmental Air Products*, 136 Ariz. 158 (1983). The *Young* court recognized that an activity must be "regular, ordinary or routine in the operation" of the general contractor's business. *Id.* at 164.

¶19    The court quoted with approval from Larson's workers' compensation treatise:

> When is the subcontracted work part of the *regular* business of the statutory employer? The statutory language lying behind this question varies somewhat. Some acts [including Arizona's] speak of work which is "part of or process in" the employer's trade or business …. But, with a surprising degree of harmony, the cases applying these assorted phrases agree upon the general rule of thumb that the statute covers all the situations in which work is accomplished which this employer, or employers in a similar business, would *ordinarily* do through employees….
>
> \*  \*  \*  \*
>
> In addition to the test based on regularity or predictability of the activity, and on its relation to the way this employer got this kind of job done in the past, a helpful additional test is that which asks whether this employer is equipped normally to handle this task, both as to skilled manpower and as to tools.

8

*Id.* at 165 *quoting* 1C A. Larson, *Workmen's Compensation Law* § 49.12 (1982) (emphasis added).[1]

**¶20**    While framing is a necessary part of constructing a new building, there is no evidence that Harte's ever performed framing work with its own employees or that it had the necessary expertise or equipment to perform that work. Justin did testify that his crews "jumped in where we could help, meaning . . . build a little reception desk for the kids, where the kids check in - - things that we wanted to do for the church . . . ." The evidence established that Harte's subcontracted out all "craft" work. Although the ALJ made a bare finding that framing was "a part or process in the trade or business of Harte's Contracting Services," he did not make specific findings that Harte's maintained more than a general contractor's ordinary control over a project.  Indeed, the appellate record does not contain evidence to support such a finding.

**¶21**    For the foregoing reasons, we set aside the award and hold that Harte's was not the claimants' statutory employer.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[1] The current citation for this section is 7 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* Ch. 70 at 70-1 (2018).